D. G. EVANS, ASSIGNEE, v. W. W. GOODWIN.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 14, 1890—Decided February 3, 1890.

1. Where the defendant in a bill in equity has conceded the jurisdiction, so far as may be implied from his failure to demur, and his subsequent acquiescence in the reference of the cause upon answer and replication to a master, after such reference, involving heavy costs, the case should be very clear to justify setting the proceedings aside for want of jurisdiction.

Master's Report.

2. The plaintiff, an assignee for creditors, finding among the assets a paper reciting that defendant had received certain notes of the assignor, the proceeds to be used in the purchase of stock, the stock to be sold only by consent, and the profits or loss to be shared by the parties, his bill filed for the sale of the stock and for an account, was properly disposed of by final decree after the report of a master upon the merits.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 36 July Term 1889, Sup. Ct.; court below, No. 854 December Term 1886, C. P. No. 3, in Equity.

To the term and number stated in the court below, Daniel G. Evans, assignee for the benefit of creditors of Charles N. Selser, John A. Selser, and George W. Turner, trading as Selser & Bro., filed a bill in equity against Wm. W. Goodwin. An answer having been filed and issue joined, the cause was referred to *Mr. H. K. Boyer* as master, who reported:

The bill alleges that the plaintiff was, by deed of assignment dated June 9, 1886, duly appointed assignee of Selser & Bro., for the benefit of their creditors, and that he accepted the trust.

That he found among the assets of the said firm certificates for 1,500 shares of stock of the Globe Telephone Company, with a receipt dated February 4, 1884, of which the following is a copy:

(EXHIBIT A.)

"Received of Selser & Bro. their notes for nine thousand dollars at four months, which I agree to use in bank, proceeds to apply to the payment of one thousand shares Globe Telephone stock at nine dollars per share; said stock to be held by Selser & Bro. in trust, and not to be sold or in any manner disposed of, unless mutually agreed upon by W. W. Goodwin and said Selser & Bro. When the stock is sold, the profit or loss to be equally divided between us. In case the stock is not sold by the time the said notes become due, the notes are to be renewed from time to time, as often as may be desired.

          "W. W. GOODWIN.

"I hold myself responsible for one half of the amount assumed by W. W. Goodwin.

          "C. A. BOCKHOVEN."

And also a letter dated June 12, 1884, from defendant to Selser & Bro., of which the following is a copy:

(EXHIBIT B.)

"Gentlemen: In view of the depreciation in the value of the stock of the Globe Telephone Company, and the fact that Mr. Bockhoven failed to secure a renewal of the notes, and in view of such fact that you have been compelled to raise the larger proportion of the amount necessary to pay the notes referred to in the agreement between us, I hereby send you certificate No. 1,164 for five hundred shares of the Globe Telephone Company's stock in my name; the same to be held by you as collateral security towards protecting you from any loss in the matter.

"I hereby agree that I will divide equally between you and myself the amount that the said five hundred shares may bring over and above five (5) dollars per share, as a consideration to you for having had to protect your own paper in this transaction. This stock, however, is not to be sold except upon the terms and conditions contained in the original agreement, namely, by mutual agreement.

"Please acknowledge the receipt of the stock and this letter, upon the bottom of the duplicate letter which accompanies it, and oblige,

"WM. W. GOODWIN."

That he, the plaintiff, inferred from the said exhibits, and was informed by the assignors, that the said firm and the said defendant were partners in the stock transaction referred to in the said exhibits, and that the said defendant had an unliquidated interest in the said telephone stock; that no settlement of their joint account or copartnership account has ever been had, and that the books of account of said firm of Selser & Bro. show an indebtedness of said defendant to said firm in the sum of $5,000, which amount, or so much as may be found to be due upon a properly stated account, the plaintiff belives he was entitled to as such assignee; and thereupon he prayed: 1. That said defendant answer this bill. 2. That a master be appointed, before whom the defendant shall be required to appear, and that said master take testimony and state an account with respect to said stock transaction between the plaintiff's assignors and defendant. 3. That a decree be entered authorizing said plaintiff to

Master's Report.

sell or dispose of said stock in an equitable manner, and that the defendant shall be ordered and decreed to pay to the plaintiff such sum as an account may show due by him to said plaintiff.　4. Such further equitable relief as may be necessary.

The defendant answered the bill, and stated:

That he had no knowledge or information concerning the said assignment. That he admitted the execution of the papers, exhibits A and B, but that said papers did not express the whole contract between defendant, Mr. Bockhoven, and plaintiff's assignors, alleging that the said papers were executed under circumstances and subject to contingencies thereinafter mentioned. He denied all knowledge concerning the said 1,500 shares of stock, excepting 500 shares, which he said was presumably the stock referred to in exhibit B.　He then says he is advised that the bill is defective in not joining as a party defendant, C. A. Bockhoven, who was in fact, he alleges, a partner in the transaction.

He then denies that he was a copartner generally with plaintiff's assignors in any purchase and sale of stock, as averred in the third paragraph of the bill, but admits that he was a party to an agreement with them and C. A. Bockhoven, by which he was to share to the extent of one quarter in any profit or loss on the purchase and sale of 1,000 shares of said stock, to be bought by Mr. Selser.　That the paper, exhibit A, was prepared by Mr. Selser.　That he never received or indorsed the said notes, which he believed were delivered to Mr. Bockhoven; and among other things, averred that the said 1,000 shares of stock were not those originally purchased under said agreement, and that said firm suffered no loss thereon.　He denies being indebted to plaintiff's assignors, or that they had ever made a demand on him, and averred that the letter, exhibit B, with the stock therein referred to, were obtained from him by misrepresentations of the actual facts.

It will be observed that the defendant admits the execution of the papers, exhibits A and B, but says they do not express the whole contract, and avers that they "were executed under circumstances and contingencies hereinafter mentioned." These circumstances and contingencies he does not mention, however, nor does he anywhere in the answer set forth that part of the contract not expressed in the writings, viz.: exhibits A and B.

He denies that he was "a partner generally with plaintiff's assignors in any purchase and sale of stock as averred in the third paragraph of the bill." There is no such charge; the allegations therein refer wholly to the single transaction. Again, in the fourth paragraph of his answer, he admits a partnership, but claims that one C. A. Bockhoven was also interested therein, which is one of the questions in dispute. He denies that the said 1,000 shares of stock were purchased with the proceeds of the discounted notes, or that they were the assets of the adventure under the agreement, exhibit A.

Therefore, the only questions in dispute under the pleadings are five : . . . .

1. Was Bockhoven a partner with Selser & Bro. and Goodwin in the said adventure ?

—The master then considered the testimony bearing upon the foregoing question and proceeded:

Mr. Turner's testimony agrees with Charles N. Selser's; so that we have the testimony of John A. Selser, Charles N. Selser, and George W. Turner, all testifying clearly and emphatically that Mr. Bockhoven had no interest of any kind with them, but that he was acting throughout wholly as the agent and representative of Mr. Goodwin. And in addition to this, the exhibits in evidence all tend to confirm the plaintiff's views and contradict the defendant; so that the master has no difficulty in reaching the conclusion that C. A. Bockhoven was not a party to the contract with Selser & Bro.

2. Are the said 1,000 shares of stock which are in evidence the shares bought with the proceeds of the discounted notes for joint account of Selser & Bro. and W. W. Goodwin?

The defendant in his answer says, that he has reason to believe, and so avers, that if the plaintiff's assignors bought the 1,000 shares of said stock, in pursuance of the agreement of February 4, 1884, they did not continue to hold the same, and suffered no loss thereon. This denial is quite feeble, but is quite as strong as plaintiff's averment, and is sufficient to put plaintiff to the proof of the fact.

—After discussing the testimony relating to this subject, the report proceeded:

In view of testimony of this kind no doubt is left in the mind of the master that the stock in evidence is the same purchased with the proceeds of the discounted notes.

The other certificate, No. 1164, in evidence, for 500 shares, dated February 27, 1884, in name of William W. Goodwin, and by him assigned in blank June 12, 1884, is, without a doubt, and so admitted by defendant, the same certificate which the defendant sent to Selser & Bro., June 12, 1884, enclosed with the letter, exhibit B, as security, as stated in the letter.

3. Has there been a loss?

The defendant says in his answer " that said firm suffered no loss thereon. " The evidence is that the said stock is now of little value; that it was worth about twenty-five cents a share at the time the bill was filed. It cost $9 a share, a loss of $8.75 a share. . . . .

4. Did the plaintiff or plaintiff's assignors ever make a demand for payment on the defendant before the plaintiff filed this bill?

The evidence is that not only did the plaintiff request of defendant a settlement of this matter, but that the assignors also urged the defendant to pay one half of the money invested, which he failed to do. . . . .

5. It also appears in evidence, and the master finds it as a fact, that the defendant broke his agreement with Selser & Bro., when he failed to have the said notes renewed at their maturity.

From all of the evidence, it is clear that it was the intention of Selser & Bro. and the defendant to carry between them the said stock, to be sold when mutually agreed upon, and that the money needed was to be raised by the defendant on the notes of Selser & Bro. Neither party at that time contemplated the contingency which arose, viz., the inability of the defendant to get the notes discounted. It is, however, quite certain that Selser & Bro. did their part under the agreement, which was to give the notes. It was plainly the defendant's duty to have them discounted. This he failed to have done. He was therefore the party in default. Had he kept his agreement in its true spirit, he would himself have advanced the money. If the duty to pay, as between Selser & Bro. and the defendant, rested upon either of them, it rested upon the defendant. Selser & Bro. of course had to protect the paper, as it was held by strangers to the original agreement. In this view of the

Master's Report.

understanding between the parties, the letter of June 12, 1884, may be easily understood.   Hence the contention on the part of the defendant that Selser & Bro. were to furnish all of the capital in this transaction, without any liability on the part of the defendant for any part of it, is not well founded.   The reverse of the proposition would be more reasonable.

The master's construction of the agreement under the evidence is, that the adventure was one for joint account; that they intended to float the stock on paper, and that they were to share equally the losses or gains.   The defendant was unwilling or unable to keep his part of the agreement (the latter the master believes), and thus unloaded upon his partners, endeavoring to make some amends, however, by placing in the hands of Selser & Bro. 500 shares of stock, then worth less than $5 a share, according to the testimony of Harrison Snyder and exhibit O, showing sales of stock on June 9, 1884, 100 shares, for $4.75 a share.

In view of these findings, is there any legal reason why a decree ought not to be made in favor of the plaintiff?

Defendant's first real objection to the bill is that the plaintiff has a full and adequate remedy at law, and argues that a general demurrer on that ground must be sustained, "because a bill in equity is not the proper remedy to compel one partner to pay over to another his definite ascertained share of capital, which, it is alleged, he promised to pay, and about the amount of which the plaintiff does not allege that there is any dispute." Upon this proposition the defendant builds an argument and reaches a conclusion quite satisfactory to the defendant, viz.: that the bill should be dismissed.

The bill is not as full and as formal as it might have been, or as it could be made by proper amendment, since the facts are ascertained.   It must be remembered, however, that the plaintiff had but little knowledge personally of the transaction, and could not reasonably be expected to be as full and explicit as a party to the transaction could have been.

If the defendant had demurred to the bill on these grounds, a more serious question in this respect would have arisen ; but since he has by answer waived such informality, the bill ought not now after all the testimony is in, to be dismissed on any such grounds, or because of informality in the framing of the bill.

Master's Report.

When the facts found will support a decree against the defendant, such defects and informalities can be at any time cured by amendment. It would be unjust and inequitable to allow the defendant to escape on any such grounds now, after he has, by filing an answer, invited the plaintiff to a contest upon the merits. It is too late now for the defendant to urge that an adequate remedy at law existed: Sunbury etc. R. Co. v. Cooper, 33 Pa. 278. The doctrine laid down in Adams's App., 113 Pa. 449, may be adopted here: While it is true that manifest want of jurisdiction may be taken advantage of at any stage of the cause, the court will not permit an objection to its jurisdiction to prevail in doubtful cases after the parties have voluntarily proceeded to a hearing on the merits, but will administer suitable relief. See also Story's Equity J., § 464.

Nor is it true that the plaintiff has a full and adequate remedy at law. If the adventure had been closed and an account between the partners had been stated, ascertaining the amount due from the defendant to the plaintiff, then an action at law might afford a full and adequate remedy; but such is not the case. Here, there is on hand not only the 1,000 shares of stock, joint property unsold, but also the 500 shares held as collateral; neither of which can be legally sold by either party without the agreement of the other; and we have seen that the defendant withheld his assent by neglecting to come to a settlement when requested. It requires the aid of a court of equity to enable the plaintiff to have this stock disposed of and the true indebtedness of the defendant ascertained; which can be done only by the court decreeing a sale of the stock and thereupon to require the account between the plaintiff and defendant to be stated.

By the terms of the agreement, exhibit A, it is provided: " Said stock to be held by Selser & Bro. in trust, and not to be sold or in any manner disposed of, unless mutually agreed upon by W. W. Goodwin and Selser & Bro. When the stock is sold, the profit or loss to be equally divided between us." Here we have the stock in question held in trust, and not to be sold except upon mutual agreement. How is the plaintiff to settle up his account as assignee, until this transaction is closed, and how can he or Selser & Bro. close it under this arrangement, without the aid of a court of equity, the defendant refusing to

pay his share of the loss, or to agree to a sale whereby the amount of his liability to the plaintiff can be ascertained?

The master at first entertained some doubt whether the plaintiff could sustain a bill filed in his own name; but the defendant made no point of it before the master, and upon reflection, the master believes that such an objection would not be well taken. Such an objection to a suit at law would probably be good, but not in equity. The plaintiff, in his argument, based his right to maintain this action in this form, among others upon the doctrine that a trustee may at any time apply to the court having jurisdiction of his accounts, for its assistance and protection in the administration of the trust, and that a trustee is entitled to the aid of a court of equity where a doubt or difficulty has arisen in the administration of the trust. In support of this doctrine, which is undoubted, he cites: Rogers's Est., 16 W. N. 228; Hill on Trustees, 543; Adams on Equity, 59; Bispham's Equity, § 147; Ashhurst v. Iron Co., 35 Pa. 30. The doctrine seems broad enough to cover this case. It is stated in Adams on Equity, 59, thus: "If in any case there is a bona fide doubt as to the course which under the circumstances a trustee should pursue, he may obtain directions by a suit in equity at the cost of the estate. And a cautious trustee will generally do so whenever a reasonable doubt exists.". . . . .

The master is of opinion that an order should be made herein dissolving the said copartnership, and directing that the said stock shall be sold at public sale; the proceeds of the 1,000 shares thereof to be paid to the assignee on account of capital account; and that thereupon the balance due by defendant to plaintiff should be ascertained by the court, and a final decree then entered against said defendent for the balance due by him, less only the net amount of the proceeds of the sale of said 500 shares given by the defendant as collateral.

The master having recommended a decree in accordance with his findings of fact and conclusions of law, the defendant filed exceptions, which, being overruled by the master, were argued before the court in banc, when they were dismissed, FINLETTER, P. J., filing the following opinion:

The defendant has filed twenty-four exceptions to the master's report, and has endeavored to sustain them by a printed

Opinion of Court below.

argument of forty-seven pages. The questions raised are properly presented in the closing paragraph, which is as follows:

" Summing up the case upon the several questions involved, irrespective of the informality in the pleadings and the question of title in the assignee, the equity of the case is that Bock hoven and Goodwin were partners with the plaintiff, in a quarter interest each in any gain or loss on a sale of the stock, and that by the failure of Bockhoven to renew the notes at maturity according to the agreement, it was the duty of the plaintiffs, thereupon, to have sold the stock at the then market price of $4.75 per share, whereupon they would have had an immediate right of action against both Goodwin and Bockhoven for a quarter against each of the loss of $4.25 per share, which would have been incurred in such action."

These questions depend upon the effect to be given to the contract, exhibit A.

It is contended by the defendant that this agreement was modified by a verbal agreement, by which Bockhoven became a partner. There is no evidence to sustain this view except that of Mr. Goodwin. The entries in the books of Selser & Bro., in which the name of Bockhoven appears, are not inconsistent with exhibit A, and do not corroborate the evidence of the defendant. But even if they did, they are satisfactorily explained by Mr. Turner, a witness called by the defendant.

Upon this question, the master has properly reported: " This is substantially Mr. Goodwin's testimony, and independent of the testimony of Charles N. and John A. Selser and George W. Turner, and the letter of June 12, 1884, it would be difficult to reach a conclusion that exhibit A was not the real agreement between him and Selser & Bro."

All that can be said about the postscript, which was written by Mr. Goodwin and signed by Mr. Bockhoven, is that it gave additional security to Selser & Bro., and also gave the defendant a right to look to him for one half of any loss that might occur. It gave him no right to interfere in the enterprise, and and no interest in the profits so far as Selser & Bro. were concerned. Why he entered into this arrangement does not clearly appear. It may be, however, an explanation of what he did in the transactions of the parties.

The defendant has contended that Selser & Bro. should have

sold the stock, and not having done so, they cannot look to him for contribution to the loss which occurred from its depreciation. But by the contract, "the stock was not to be sold, or in any manner disposed of, unless mutually agreed upon by W. W. Goodwin and Selser & Bro." There is no evidence that the defendant ever requested them to sell the stock, and it would have been a violation of the agreement and their trust for them to do so without his consent.

The master has very carefully and ably considered the whole subject, and we dismiss the exceptions and confirm his report.

A final decree having been entered, as recommended by the master, the defendant took this appeal, specifying that the court erred:

1. In not dismissing the bill for want of jurisdiction in equity.

2–9. In dismissing certain of the exceptions to the master's report filed by defendant.

*Mr. Hector T. Fenton* and *Mr. F. Carroll Brewster*, for the appellant.

*Mr. Wm. G. Foulke*, for the appellee.

PER CURIAM:

We are asked to dismiss this bill for want of jurisdiction. It is true the want of jurisdiction may be taken advantage of at any stage of the proceedings. But this is so only in clear cases, when the want of jurisdiction is patent. It is not so here. The most that can be claimed is that the jurisdiction is doubtful. Under such circumstances the defendant should have demurred. This was not done. The defendant conceded the jurisdiction, so far as it may be implied from his acquiescence in the reference to a master. After such reference, involving heavy costs, the case should be very clear to justify us in setting the proceedings aside for want of jurisdiction. We have sometimes done so of our own motion, but they were all instances where the want of jurisdiction was so palpable that we felt constrained to take such course. Regarding this as analogous to a bill to foreclose, it is at least doubtful whether

a demurrer could have been sustained. So far as the merits of the case are concerned, they have been so well discussed, not only by the able and learned president of the court below, but also by the learned master, that we need not add anything to what they have so well said.

> The decree is affirmed, and the appeal dismissed, at the costs of the appellant.