## Shillito  *v.*  Shillito,  Appellant.

*Will—Equity—Charge of maintenance on devisees jointly—Contribution —Jurisdiction—Effect of voluntary hearing—Practice.*

160  167
201  340
160     167
209    ²602

Where a testator imposes upon his sons to whom he has devised his land the duty of maintaining his widow and daughters, one of the sons who has performed this duty may compel the other to contribute to the expense thereof by a bill in equity, where a question of accounts is raised by the pleadings.

While a manifest want of jurisdiction of a court of equity may be taken advantage of at any stage of the cause, the court will not permit an objec-

tion to its jurisdiction to prevail in doubtful cases after the parties have voluntarily proceeded to a hearing before a master on the merits. In such case the court will administer equitable relief.

Argued Oct. 11, 1893. Appeal, No. 54, Oct. T., 1893, by defendant, W. Washington Shillito, from decree of C. P. Beaver Co., Dec. T., 1891, No. 1, on bill in equity, for plaintiff, G. Milton Shillito. Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and THOMPSON, JJ. Affirmed.

Bill in equity to enforce contribution to expenses paid by plaintiff for support of mother and sister under father's will.

From the report of the master, Frank H. Laird, Esq., it appeared that James Shillito, father of plaintiff and defendant, died Nov. 10, 1864, leaving a will by which he devised his land to his two sons. He also directed as follows: "It is my will that my wife Violet shall have a comfortable maintenance from my estate during her life with a house to live in. . . . It is my will that my daughters, so long as they live unmarried with my wife Violet, shall be provided for by my sons, W. Washington and G. Milton." The sons accepted the land devised to them. The bill, after stating the above facts, averred that Violet Shillito is still living and has been provided with a house and maintained and kept by complainant from the year 1865 until the time of filing the bill, entirely at his own expense and outlay, without any contribution from W. Washington or from the estate devised to him by said will. That he has also maintained and supported his sister, Violet Ann Shillito, who is a daughter of said James Shillito, at his own expense and outlay, since the year 1865.

The answer denied so much of the bill as averred that Violet Shillito, mother of the parties, had been maintained by complainant entirely at his own expense and outlay since the year 1865. And averred that, on Oct. 6, 1871, the said Violet, by an agreement in writing, released the respondent, for a consideration therein mentioned and received, from each and every liability under said will, so far as she was interested; but, notwithstanding said agreement, respondent, since the year 1865, had assisted in maintaining and keeping the said Violet Shillito, and is still doing so.

The answer also denied so much of the bill as averred that

complainant has kept and maintained Violet Ann Shillito, sister of complainant and respondent, at his own expense and outlay since 1865, and averred that he had always assisted in maintaining both his mother and sister as aforesaid, and still assists, and that he is informed and believes that complainant has contributed but little, if anything, except what he has been paid for, to the support and maintenance of said Violet and Violet Ann Shillito.

The answer also averred that while respondent has always assisted in maintaining and supporting the said Violet and Violet Ann Shillito to the extent of more than one half of the entire sum, yet he has done so because of the love he bore them and not because of any legal responsibility, but he is advised and believes that if he is responsible for their support and maintenance it is only to the extent of one third thereof, and the said G. Milton for two thirds, and that said respondent is only liable for six years immediately preceding the filing of the bill.

The court entered a decree in favor of plaintiff for $325.44, one half expense of support of sister for six years prior to suit, less payments, in an opinion by WICKHAM, P. J.

*Errors assigned* were (1) in entertaining jurisdiction ; (2) in not dismissing bill.

*Wm. A. McConnell, John M. Buchanan* and *Lewis W. Reed* with him, for appellant, cited: Bisph. Eq., 4th ed. § 328; 2 Beach on Equity, § 824; Marshall's Ap., 27 W. N. 225; Hackadom's Ap., 11 Pa. 86; Adams, Equity, ed. 1868, 267; Pomeroy's Eq. Jurisp., 2d ed. § 178; Story's Eq. Pl., 10th ed. § 473; Foley v. Hill, 1 Phillips, 399; R. R. Co.'s Ap., 99 Pa. 177; Paton v. Clark, 156 Pa. 49; Weaver v. Shenk, 154 Pa. 206.

*A. P. Marshall, E. B. Daugherty* and *J. L. Holmes* with him, for appellee, cited: Bisph. Eq. §§ 328, 329, 334; Pomeroy's Eq. Jurisp. §§ 277, 278; Horbach's Admrs. v. Elder, 18 Pa. 33; Adams's Ap., 113 Pa. 449; Evans v. Goodwin, 132 Pa. 136; Gordon v. Freed, 4 Mont. Co. R. 183.

OPINION BY MR. JUSTICE McCOLLUM, March 12, 1894:

The parties to this litigation are sons of James Shillito,

deceased, and executors of his will.  To them he devised all his real estate, and on them he laid the duty of providing for his daughters so long as the latter should live unmarried with his widow.  He also directed that in addition to her rights under the intestate and exemption laws, his widow should have one cow, and a comfortable maintenance from his estate during her life, with a house to live in.  In the acceptance by the sons of the lands devised to them there was an undertaking on their part to discharge, in conformity with the intention of the testator, the duty imposed on them by his will.  Thenceforth they were bound for the faithful performance of this duty, and jointly and severally accountable for any breach of it to the parties for whose benefit it was imposed.  If one of them was compelled to bear the whole burden in consequence of the inability or refusal of the other to bear his share of it, the former became entitled to contribution from the latter.

The right to contribution in such case is founded upon equitable principles and was originally enforceable only in a court of equity.  Now, however, it may be enforced in a court of law, if a contract to make contribution can be implied from the circumstances which create the common liability, as where one of two sureties is compelled to discharge their mutual undertaking to answer for the default of their principal.  But a court of equity still has jurisdiction to enforce contribution, and in many cases it is the only court affording a convenient and complete remedy therefor.

We cannot sustain the appellant's contention respecting jurisdiction in this case.  It is not clear that the matters put in issue by the bill and answer can be conveniently and adequately settled in a common law action.  The bill charges that since 1865 the respondent has failed to contribute anything to the support of their unmarried, sick, and feeble-minded sister, or to the maintenance of their mother, and that the complainant from that time has borne the whole burden of providing for them.  The prayer of the bill is that the court will determine and decree what shall be paid by the former to the latter for past maintenance of their mother and sister, and what shall be so paid for their support in the future.  The answer denies the allegations in relation to the maintenance of their mother and sister, and avers that the complainant has been paid for

what he has contributed to their support, and that the respondent's contributions thereto have exceeded his liability therefor. It also avers that in 1871 the respondent was released by his mother from liability for her future support, and that only one third of the burden of providing for his sister rests on him.

It will readily be seen from this summary of the issues that an adjustment of the dispute between the parties involved the ascertainment of their respective liabilities under the will, and of their respective contributions in discharge of the duty imposed by it. In view of the issues formed by the pleadings and of the nature of the accounts to be examined and passed upon in the decision of the case, we cannot say that any mistake was made in resorting to a court of equity for the relief sought. Moreover the jurisdiction of the court was not denied or questioned by demurrer, plea or answer. The first intimation of a want of jurisdiction came after the most of the testimony had been taken by a master appointed on the agreement of the parties, and after the most of the expenses of the litigation had been incurred. We have therefore a case to which the language of this court in Adams's Appeal, 113 Pa. 449, is applicable, even if it be conceded that there is room for doubt respecting jurisdiction. In delivering the opinion of the court in the case cited the present Chief Justice said: " While it is true that manifest want of jurisdiction may be taken advantage of at any stage of the cause, the court will not permit an objection to its jurisdiction to prevail in doubtful cases after the parties have voluntarily proceeded to a hearing on the merits, but will administer suitable relief." To the same effect is the language of this court in Evans v. Goodwin, 132 Pa. 136.

The specifications of error are overruled.

Decree affirmed and appeal dismissed at the cost of the appellant.