Ely et al., Appellants, *v.* Edwards.

Argued April 18, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Fred 'B. Trescher* of *Kunkle, Walthour & Trescher,* for appellants.—The relation of co-obligors is one of mutual trust and confidence: Shaeffer v. Clendenin, 100 Pa. 565; In Re: Koch, 148 Wisconsin 548.

*R. E. Best* of *Smith, Best & Horn,* for appellee.

OPINION BY STADTFELD, J., October 2, 1933:

This is an appeal by complainants from the decree of the lower court dismissing a bill in equity. filed by complainants to determine the amount of contribution which the estate of Charles F. Ely, deceased, should make to Thomas E. Edwards, defendant, towards the payment of a note on which plaintiff's testator and defendant were joint accommodation makers, and which had been paid by defendant, and also to direct the defendant to assign to complainants the mortgage which had been given as collateral for the indebtedness represented by said note, and then held by defendant.

Prior to the filing of said bill, defendant, Edwards, had brought an action of assumpsit against the executors of the last will and testament of Charles F. Ely, deceased, complainants in said bill in equity, to recover from the latter the amount of contribution requested to be ascertained in the equity proceeding. By agreement of counsel the cases were heard together.

The court below, in an opinion by COPELAND, P. J., found the following facts: "First: The Union Fuel Company on May 21, 1917 executed and delivered to Mason R. Welty its mortgage and bond in the sum of $7,990.75, binding the real estate of the company situate in East Huntingdon Township, Westmoreland County, Pennsylvania, payable $3,995.27 ½ in six months and $3,995.37 ½ in one year from the date thereof, with interest; this mortgage being recorded in the recorder's office of Westmoreland County in Mortgage Book Vol. 293, page 334.

"Second: That this mortgage was reduced by the payment of $1,000 on November 23, 1917 and on said date was assigned to the Barclay-Westmoreland Trust Company of Greensburg, Pa., by the said Mason R. Welty, as collateral security for his note at said bank in the sum of $6,990.75.

"Third: That this mortgage was reduced to the principal sum of $3,000 by further payments up to and including December 4, 1922, and was then reassigned to the said Mason R. Welty by the Barclay-Westmoreland Trust Company who on the same day reassigned it to Charles F. Ely.

"Fourth: That on December 4, 1922 Charles F. Ely and Thomas E. Edwards executed and delivered to the Barclay-Westmoreland Trust Company their note for $3,000 payable on demand and delivered and pledged as collateral security for the payment thereof the balance of the mortgage of the Union Fuel Company as recorded in Mortgage Book Vol. 293, page 334 and on the same day the said Charles F. Ely assigned the said mortgage on the margin thereof to the Barclay-Westmoreland Trust Company as collateral security for said note so given.

"Fifth: That Charles F. Ely died on March 24, 1923 and letters testamentary were issued on his estate to J. Wilfred Ely and Nellie M. Ely, the executors

named in his will as probated and recorded in the register's office of Westmoreland County.

"Sixth: That no payments of debt or interest were made on this note or upon the collateral mortgage during the lifetime of the said Charles F. Ely by him nor by his executors since his death.

"Seventh: That the following payments of interest were made by the Union Fuel Company, to wit: April 5, 1923, $60.50; October 3, 1923, $91.50; April 5, 1924, $91.50 and October 14, 1924, $91.50, which paid interest in full to October 4, 1924.

"Eighth: That on July 7, 1926 the Barclay-Westmoreland Trust Company entered the note for $3,000 at No. 813 August Term, 1926 against the said Thomas E. Edwards, co-obligor with Charles F. Ely, deceased, but no proceedings were taken to charge the real estate of Charles F. Ely, deceased, with the said debt within the statutory period.

"Ninth: That on January 31, 1927 Thomas E. Edwards paid $510 interest to the said Barclay-Westmoreland Trust Company on said note and judgment.

"Tenth: That on July 20, 1927 the said Thomas E. Edwards paid the Barclay-Westmoreland Trust Company the sum of $2,928 on the said judgment and the same was assigned to him.

"Eleventh: That after due notice posted by handbills and by letter to the executors of the estate of Charles F. Ely, deceased, and after legal adjournment of said sale on May 4, 1926, the collateral on said note, the mortgage recorded in Mortgage Book Vol. 293, page 334, was on May 12, 1926 sold to the said Thomas E. Edwards for $160, he being the highest and best bidder and that being the highest and best price bid for the same.

"Twelfth: That in pursuance of said sale and purchase the Barclay-Westmoreland Trust Company on May 20, 1927 assigned said mortgage to the said

Thomas E. Edwards and it was so held and owned by him at the time the bill in equity was filed.''

The chancellor being of the opinion that the action in assumpsit was a sufficient and adequate remedy at law to determine the liability of the plaintiffs to the defendant, relying upon Friedman et al. v. Maltinsky, 260 Pa. 312, and Shillito v. Shillito, 160 Pa. 167, and to which we have referred more in detail in the opinion which we have this day filed in the appeal from the judgment in the action of assumpsit, did not consider the question of contribution in the equity proceeding but entered judgment in favor of plaintiff in the action in assumpsit. The chancellor, being further of the opinion that the sale of the collateral mortgage to the said Edwards for value, he being a co-obligor on the direct obligation, did not entitle the estate of Charles F. Ely to an assignment of the mortgage or any part thereof. That the sale of said mortgage, after due notice, was a sale for value, and his payment of the amount of his bid entitled him to an assignment of the collateral mortgage and ownership of the same absolutely and thereupon entered a decree dismissing the bill. From that decree this appeal is taken.

The material facts are not in dispute. We are in accord with the lower court in its conclusion that the equities in the matter of contribution can be enforced in the action at law. We can not however agree with its conclusion that the sale of the collateral mortgage by the Barclay-Westmoreland Trust Co., to the defendant, entitled the latter to the absolute ownership of the same in his own right, or that the estate of Charles F. Ely, deceased, was not entitled to an assignment of an undivided one-half interest therein upon the payment of one-half of the amount which the said Edwards was compelled to pay in liquidation of the liability on the joint note.

Thomas E. Edwards and Charles F. Ely, the parties

to this litigation, were joint accommodation makers for the Union Fuel Company, a corporation in which both parties were interested. The balance of debt owing by said company to Mason R. Welty on a note of the company, secured by the mortgage in question and which had been assigned to the Barclay-Westmoreland Trust Company, as collateral, was paid with the proceeds of the accommodation note of the said Edwards and Ely, and the mortgage reassigned to the said Welty, and then by the latter assigned to Ely and by Ely to the same Trust Company, as collateral security for the note of the said Edwards and Ely. Ely had no interest in the mortgage at the time and was merely the conduit for the reassignment to the Trust Company.

After the making of the note in question, the interest payments were made by the Union Fuel Company up to and including October 4, 1924. Charles F. Ely died on March 23, 1923. After his death, and shortly before May 2, 1926, Edwards notified the Trust Company to sell the collateral and to collect the note.

On July 31, 1927, Edwards paid the bank $510 on account of interest, and in July of 1927, paid the balance of the debt and interest in the sum of $2,928 and at that time obtained from the bank an assignment of the mortgage and bond.

On October 26, 1927, prior to the filing of the bill in equity, the complainants, executors, had tendered to Edwards one-half of the debt and interest paid by the latter to the bank, as also the costs in the assumpsit case, and requested an assignment of the mortgage. This tender was maintained in the bill.

The sole question in dispute is whether complainants are entitled to an assignment of the mortgage and the bond secured thereby, or of any interest therein. As a co-surety it was defendant's duty to secure the highest possible price; as a purchaser it was to his interest to

buy it as cheaply as possible. The sale was brought about at his instance. At the sale, Edwards insisted the mortgage was valueless. Mr. H. E. Marker, attorney for and a director of the Barclay-Westmoreland Trust Company, and who represented the latter at the sale of the mortgage, testified: ''There was considerable discussion about the value of that mortgage. We had no knowledge about it except that the surface was practically valueless, of the land covered by that mortgage. All of the machinery and equipment we were informed had been removed from the coal mine and the coal mine was filled with water. After investigation, we discovered that Mr. Edwards insisted on the day of the sale that the coal had all been removed and there was no coal under the land, and, therefore, if that was the case the price it brought was a good price for the mortgage.''

The conduct of Edwards both prior to and at the sale was such, in view of his relation as a co-surety on the note, to put on him the burden of showing that the price at which the mortgage was sold to him was fair and reasonable. His conduct was certainly not such to enhance the value of the mortgage at the sale. We do not think that the fact of Edwards' purchase of the mortgage at public sale, in any way changed the status of Edwards in relation to the representatives of Ely's Estate.

''The relation of co-sureties is one of mutual trust and confidence and they are entitled to participate equally in any indemnity which either of them may obtain from the principal, directly or indirectly.'' Shaeffer v. Clendenin, 100 Pa. 565.

''The surety receiving the security or indemnity is regarded as occupying the position of a trustee for the others with all the duties incident to such relation.'' 50 C. J. 283, Sec. 469.

''Both in law and in equity, a co-surety is a quasi

trustee for his associates of all special advantages he acquires from the principal debtor, either in adverse proceedings or otherwise, for the benefit of the bearers of the common burden, with all the duties incident to such relation. He cannot specially profit out of it. He is liable for loss proximately caused to his associates by failure to honestly and with reasonable care perform his legal duty to his associates, to reasonably conserve his special advantages for the common benefit." In re: Koch, 148 Wisconsin 548, at page 560; 134 N. W. 663.

"A surety cannot speculate off his co-sureties, and if in payment of the debt he secures any benefit, his co-sureties are entitled to their share therein." 27 Am. & Eng. Ency. of Law, 487.

As stated by Mr. Justice MITCHELL in Church v. Winton, 196 Pa. 107, 108: "The law governing this class of cases is entirely well-settled. If a trustee buys the trust property even at a public sale, which is brought about, or in any way controlled by himself, he will be presumed to buy and hold for the benefit of the trust." The defendant himself recognized this principle in the action in assumpsit for contribution which he brought against the plaintiffs in this suit; for in his statement of claim in that action he sought to recover by way of contribution from these plaintiffs one-half of the amount which he paid for the mortgage when it was sold, as collateral, by the trust company. His right to demand this could only be based on the proposition that his co-surety was entitled to half of the mortgage so purchased by him.

The mortgage which was assigned to Charles F. Ely, whether he was considered the sole owner thereof, or whether it was held in trust for himself and Edwards, could inure only to the benefit of both for the payment of the loan in which they occupied the status of co-sureties for the Union Fuel Company. Complainants

522

are entitled, upon the payment by them of one-half of the debt and interest paid by Edwards including the $160 paid by him at the sale of the mortgage and interest thereon from the respective dates of payment, and the costs in the suit in assumpsit, to an assignment of an undivided one-half interest in the mortgage and the bond secured thereby.

The first, third, fourth, fifth, eighth, twenty-first, twenty-second and twenty-third assignments of error are sustained. The other assignments are overruled. The final decree of the lower court is reversed and the record is remitted for further proceedings not inconsistent with this opinion, if it should become necessary in enforcing the equities between the parties in the action in assumpsit. Costs in the court below and in this appeal to be paid by appellee.