## Walls, to use, v. Gaines et al.

*Philip J. Reilly*, for plaintiff.

*Thomas C. Gawthrop*, for garnishee.

WINDLE, P. J., September 16, 1940.—In this proceeding by attachment execution plaintiff has taken this rule to show cause why judgment should not be entered against garnishee on its answers to the interrogatories filed. It must be made absolute.

There is no dispute as to the facts involved. If, therefore, from them by inference of law liability on the part of garnishee is established, judgment may be entered in favor of use-plaintiff and against garnishee; McGeary v. Huff, 31 Pa. Superior Ct. 401; Wanamaker & Brown v. Muldoon, 47 Pa. Superior Ct. 114; Miller v. Lewis, 21 D. & C. 684. No question is raised in this regard, the only dispute being as to the proper construction of certain paragraphs of a policy of insurance covering liability for personal injuries occasioned by the operation of an automobile. We believe the paragraphs in question must be construed as use-plaintiff contends and consequently that judgment must be entered in its favor.

These undisputed facts are briefly as follows: Prior to July 1, 1932, Eagle Indemnity Company, garnishee

above named, at the instance and request of and on payment of a premium by Goldstein's Fruit & Produce, Inc., a company doing business in the City of Lancaster, Pa., issued a certain policy of insurance covering a Plymouth sedan owned by the Goldstein Company, in which it agreed to pay, within certain limits, losses arising out of liability for damages "of the named Insured, and/or any person or persons while riding in or lawfully operating" the said Plymouth sedan "and/or any person, firm or corporation legally responsible for the operation thereof, provided such riding, use or operation is with the permission of the named Insured . . ." The policy further provided, under condition 3:

"This policy does not cover any liability: (*a*) Imposed upon or assumed by the Insured under any Workmen's Compensation Act, Plan or Law, or under any contract of whatever nature; (*b*) In respect of injuries sustained by employees of the Insured while engaged in the operation, maintenance or repair of any of the automobiles insured hereunder or while in the course of employment in the business of the Insured . . ."

On July 1, 1932, while said policy was in force, Richard Gaines, defendant above named, was employed by the Goldstein Company. On that day he was operating in this county the Plymouth sedan owned by said company in the course of his employment and with the permission of his employer. Properly riding with him in the car were Coleman Walls, likewise an employe of the Goldstein Company, and two other employes of that company, all, including Gaines, being on the way to work for said company. During the course of the journey a collision took place between the Plymouth sedan and a motor vehicle owned by B. F. Shriver Company, use-plaintiff. Walls brought an action in this court against the Shriver Company, which latter corporation brought upon the record by sci. fa. as an additional

defendant the said Richard Gaines, driver of the Goldstein Company's car. The trial of the suit resulted in a verdict in the amount of $2,700 in favor of Walls and against both defendants jointly, upon which judgment was duly entered. Said judgment was later marked to the use of B. F. Shriver Company, which therefore stands in plaintiff's shoes and which now by this proceeding in attachment execution seeks to enforce its right of contribution from Gaines against Eagle Indemnity Company, the carrier of liability insurance on the car involved. Whether or not that can be done depends upon the construction to be given the above-quoted conditions contained in the policy of insurance referred to.

Eagle Indemnity Company, garnishee, resists payment upon the ground that the above-quoted condition 3 (b) relieves it of any liability in connection with the recovery of Walls against Gaines because Walls was an employe of the Goldstein Company and was injured while in the course of said employment and, therefore, is within the express terms of said condition in the policy, not denying, however, that under the general terms of the policy Gaines, while operating the car in question at the time of the accident, was insured. It is only as respects his liability to Walls that he is not insured, according to the Eagle Company's contention. The Shriver Company, on the other hand, contends that said condition 3 (b) must be construed to refer to employes of the person found in any particular situation to be liable and insured under the policy—in this case Gaines—and that as Walls was not an employe of Gaines the exception provided by said condition in the policy has no application here. With that latter position we agree.

The question here raised has never been decided in this jurisdiction so far as we and diligent counsel can determine. There are no reported cases in this State directly in point. We, therefore, treat the matter as

one of first impression uncontrolled by the doctrine of stare decisis.

Our decision in this case depends upon the construction of the contract of insurance evidenced entirely by the policy above referred to. That construction is for the court: Pears v. Shannon, 329 Pa. 278; Dougherty et al. v. Proctor & Schwartz, Inc., 317 Pa. 363. In that connection it must be borne in mind that garnishee is a compensated insurance carrier and that it drafted and prepared the policy in question. Said policy must therefore be interpreted and construed strictly against it: Hempfield Township School District v. Cavalier et al., 309 Pa. 460, and cases there cited. And " 'The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intentions of the parties, so far as that may be done without contravention of legal principles. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent:' 13 C. J., page 521, sec. 482": Hempfield Township School District v. Cavalier et al., supra (p. 464). And further, this contract must be considered in the light of the facts and circumstances under which the parties contracted, and with reference to the subject matter and obvious purposes: Hild v. Dunn, 310 Pa. 289. It is also true that in case of doubt or ambiguity the provisions of an insurance policy will be viewed in the light most favorable to the insured: Janney v. Scranton Life Insurance Co., 315 Pa. 200; Morris v. American Liability & Surety Co., 322 Pa. 91.

As respects the purposes for which this policy and others containing the same language were written, we have no doubt that they are not only to protect owners or permittees of owners against liability to persons negligently injured by the motor vehicles designated but also to assure compensation in damages to such persons so injured. While the policyholders are doubt-

less ofttimes actuated by selfish motives in effectuating the first purpose mentioned, nevertheless many thereof are just as doubtless actuated by altruistic motives and seek to effectuate the second as well, desiring, in addition to saving themselves against loss in damages, to make it possible for those injured through the improper operation of their automobiles to be properly, fully, and adequately compensated for such injuries. This latter-mentioned purpose is further recognized by the States that require automobile operators and owners to carry liability insurance, and by the statute in our own State which requires proof of financial responsibility of operators and owners of cars under certain circumstances, and provides that evidence of the ownership of a policy of liability insurance as set forth in that act constitutes such proof: Uniform Automobile Liability Security Act of May 15, 1933, P. L. 553. It cannot, therefore, be considered that the only purpose of the policy here in question is to insure the insured, whoever he may be, against the payment of damages but that it also was meant to provide adequate compensation to one found to be entitled thereto.

It will be noted further that condition 3 here involved seeks to limit garnishee's liability—to reduce the obligation assumed by the general terms of the policy. While of course the contracting parties to this agreement could impose restrictions upon the liability assumed by the insurance company, nevertheless that should be done in clear and unequivocal language and the words and phrases purporting to do so must be strictly construed against the limitation.

"In case there is any ambiguity in the policy the rule is that all provisions, conditions, or exceptions which in any way tend to work a forfeiture of the policy or limit or defeat liability thereunder should be construed most strongly against those for whose benefit they are inserted, and most favorably toward those against whom they are meant to operate . . .": 1 C. J. 414, quoted with approval in the opinion in

Norlund v. Reliance Life Insurance Co., 282 Pa. 389, 391.

Approaching the question before us with the above principles and ideas in mind we cannot construe condition 3(b) as garnishee would have us do. The policy of insurance here involved, while it was issued at the instance of the Goldstein Company, insured not only that company but other persons as well. It is clear from a consideration of the general terms thereof, without reference to condition 3, that one driving the car described therein with the permission of the owner, the Goldstein Company, the "named Insured", is insured. Consequently the protection afforded by that policy is extended to Gaines in the situation before us. This much the garnishee admits. Indeed the insured in the situation before us is Gaines and Gaines alone: Indemnity Insurance Company of North America v. Kirsch et al., 28 D. & C. 630. And after a careful consideration of condition 3, we believe that said protection so afforded Gaines includes protection against his liability to Walls—which is the liability here sought to be enforced. As we read and construe paragraph (b) of that condition, relied on by the garnishee in denying liability in any amount, it means that the Eagle Company does not insure any one of those persons who may be insured by the terms of this policy against liability to an employe of that one so insured. The word "Insured" used in that condition is not to be read as "named Insured", a phrase used elsewhere in the policy, but refers to any and all who may, by future happenings, become entitled to the protection of the policy. The Goldstein Company was undoubtedly entitled to such protection and others driving the automobile in question with the permission of said company were also so entitled. If liability was sought to be enforced against the Goldstein Company in favor of one of its employes injured while engaged in the operation, maintenance, or repair of said car or while in

the course of his employment, this insurance contract did not insure against such liability, and if liability were sought to be enforced against one legally driving the automobile with permission of the Goldstein Company in favor of an employe of said driver so injured, this insurance contract did not insure against such liability. This is what we believe the condition says and means. We do not think it says or means that if liability is sought to be enforced against a legal driver of said car with the permission of the Goldstein Company in favor of the employe of someone else, even the Goldstein Company, then and under these circumstances this contract affords no protection.

We can interpret this condition in no other light. Such a construction renders the provisions of the policy entirely consistent. It denies insurance where the liability imposed is in favor of an employe of the one insured, while engaged in the manner stipulated, in each instance. That is reasonable. To hold otherwise would result in differentiating between the protection provided when the Goldstein Company was found liable and that provided when someone else, also insured by the policy, was found liable. We see no reason for this distinction. But if the insurance company had desired to make it, it could have done so in language admitting of no doubt since it prepared the form of policy here used.

To apply the construction urged by the garnishee we believe leads to an unreasonable and untenable conclusion and one not reasonably expected to have been within the contemplation of the parties. We see no reason why a permittee insured by the general terms of the policy should not be protected in the case where the one negligently injured is a complete stranger to him but happens to be an employe of the named insured, or why such injured person should be barred from the benefits of the policy when injured by one not his own employer. No sound basis for such a situation exists

in our opinion. We cannot think that the intention of the parties to this contract included any such result.

Had the additional defendant joined in the original suit been the Goldstein Company and had liability been fixed on it by the verdict and judgment in favor of Walls, on the doctrine of agency and respondeat superior, then a very different final conclusion would have to be reached, based however upon the same construction of condition 3(b). Under that circumstance the liability here involved would be for injuries suffered by an employe of the insured, while in the course of his employment, as in that situation determined, and condition 3(b) would operate to relieve the Eagle Company of any responsibility in the matter. However, that is not the case in the situation before us and we believe the insurance company is liable. The suggestion in garnishee's brief that the operation of the car by Gaines was the operation of the Goldstein Company on the doctrine above mentioned does not compel a different conclusion. The controlling question in that regard is, upon whom was the liability here fastened, not, who may have been, in law, operating the car.

The Eagle Company contends further that if it is liable to the Shriver Company at all it is liable only for a part of the sum here claimed by the latter, arguing that its liability is reduced in amount by the aggregate of the payments admittedly made to Walls by the carrier of the Goldstein's Company's workmen's compensation insurance. It points to paragraph (a) of condition 3 of the policy, above quoted, as authority for that position.

We cannot agree with that contention. We think that the words "the Insured" in said paragraph must be construed in the same manner and to the same effect as are the same words in paragraph (b) immediately following it, as pointed out above, and for the reasons above stated. We believe the liability excepted from the operation of the general terms of the policy by said paragraph is liability imposed, under any

workmen's compensation act or any contract, upon the particular person insured as determined in any certain factual situation imposing liability, and not liability imposed in such manner on the named insured, if he be not the one held liable for the injuries in question —if he be not the actual insured in the situation involved—as here he is not. Here the only liability under The Workmen's Compensation Act was imposed on the named insured. There was none on Gaines because Walls was not his employe. Consequently since Gaines and not the Goldstein Company was "the Insured" in this case the liability arising under said act is not imposed on "the Insured" and therefore not excepted from the coverage of the policy by the conditions referred to. For that reason no allowance can be made in the judgment entered herein against garnishee for the workmen's compensation payments made to Walls by the compensation insurance carrier of someone other than Gaines, even through the Goldstein Company. Walls could have recovered from Gaines without making any such allowance—subject of course to the right of subrogation of the insurance company that paid him compensation because of his injuries—and consequently so can B. F. Shriver Company.

We are satisfied that the meaning and intent expressed in condition 3 is as above indicated. However, if it should be thought that said meaning and intent was not so clear as we believe it to be, nevertheless in that event it must be concluded that paragraphs (a) and (b) of said condition are ambiguous and, under the authorities above cited in that connection, must therefore be construed strictly against the insurance company and most favorably to the insured, as well as most favorably toward those against whom the limitations provided thereby are meant to operate, to wit, Gaines, "so as to cover the loss": Morris v. American Liability & Surety Co., supra (p. 96). Consequently no different result would be attained.

We do not find the cases cited by garnishee—and we can find no others at all in point—helpful to its cause. The only Pennsylvania case referred to, Dickey v. General Accident Fire & Life Assurance Corp., Ltd., et al., 328 Pa. 541, does not on its facts raise the question here presented. There the driver of the car found liable in damages was the named insured himself and it was his chauffeur who was injured—in fact, killed —and to whose administratrix damages were awarded. The court held that a clause in the insurance policy similar to the one before us denied coverage and prevented recovery against the insurance company. There, however, the injured man was admittedly an employe of the insured referred to in the limiting clause whereas here he was not. We consider that decision no authority in this case.

In Shawcroft et al. v. Standard Accident Ins. Co., 177 Wash. 106, 30 P. (2d) 987, the point here involved was not raised or discussed, the decision turning on whether or not the injured person was an employe of the named insured. It constitutes, therefore, no considered adjudication of the question before us. In Bernard, Admx., v. Wisconsin Automobile Ins. Co., 210 Wis. 133, 245 N.W. 200, the words and provisions of the policy under consideration are so different from those before us that the decision therein cannot be considered as authoritative at all in this case. It was there held simply that the coverage of an additional assured was, by the very terms of the policy, to be measured by the coverage of the named assured and since the latter excluded liability to employes of the named assured so did the former. And in Madison, Admx., v. Steller et al., 226 Wis. 86, 275 N.W. 703, the court held by reason of a definition clause in the policy, defining "assured" when used therein, it was necessary to hold that such word used in a clause similar to the one before us included the named assured and to deny protection under the policy to a permittee

of the named assured found liable for the injuries to an employe of the latter. It is, however, significant in plaintiff's favor to note that the opinion of the court, in the last-named case, states that without the definition in the policy the clause in question would be so ambiguous as to require a construction thereof against the insurance carrier and in favor of the one claiming protection. (In our case there is no clause defining the term "the Insured.")

Garnishee, in a supplemental brief filed, argues that Shriver Company is attempting to do by indirection what it could not do directly, i. e. "to place upon the insurance carrier for Goldstein a liability which Walls himself did not and could not have placed upon that carrier". The statement of the situation as quoted is not strictly correct in our opinion. The endeavor is to place upon the insurance carrier for *Gaines* a liability to Walls—not upon the insurance carrier for Goldstein. True, the same company is insurance carrier for Goldstein and for Gaines as well in the present situation, but it is only in its latter capacity that it is here resorted to—not in its capacity as carrier for Goldstein at all. Goldstein was not sued and needs no protection against the liability of the judgment here. As pointed out above, the policy in question provides insurance to Gaines in the situation before us and it is that insurance that Shriver Company now looks to and seeks to enforce—not any insurance that might have been available to Goldstein had that corporation been sued and held liable. Consequently this must be considered as an attempt to enforce a liability against Gaines' insurance carrier—not against Goldstein's. For the reason herein set forth we believe the attempt must succeed.

Garnishee goes on, in support of the position above stated, to suggest that the manner of bringing suit, the joinder of Gaines as an additional defendant, and the subsequent assignment of the judgment by Walls

to Shriver Company is all a deep-laid scheme to accomplish by indirection what Walls could not do directly, to wit, compel garnishee to pay, being an endeavor to enforce Shriver Company's right of contribution from Gaines for the latter's share of the verdict and judgment obtained against both of them by entering into a contract of assignment of that judgment with plaintiff, wherefore it is an endeavor to enforce a liability imposed on "the Insured" under a contract, and therefore falls within the limitation of condition 3 (*a*) above quoted. With that we cannot agree.

In the first place we do not believe that the clause relied on by the garnishee includes or was ever intended to include the right of contribution or any assignment necessary to enable a codefendant to enforce that right. The context and all the circumstances negative any such thought. The phrase "or under any contract of whatever nature" follows immediately and is set off in the same clause with "Imposed or assumed by the Insured under any Workmen's Compensation Act, Plan or Law," referring to liability excepted from coverage. It clearly refers to liability similar to or in somewhat the same category as that referred to by the words immediately preceding—to wit, some liability arising out of a contract—express or implied from affirmative acts—between employe and employer or the injured person and the one causing the injury as respects liability for injuries, and not an obligation imposed by operation of law and in no way created by any act of the parties save their tortious ones, and arising not between the insured and his victim but between the insured and a joint tortfeasor. We do not believe that a subject so remote in idea as the right of contribution between joint tortfeasors—even if a contractual right at all, and we believe it is not, as appears hereinafter—can be held to have been within the contemplation and intendment of the parties to

this insurance contract as evidenced by the clause referred to—and no other clause is pointed to by garnishee. If it was they picked poor words to express their thought. Insurance companies in preparing their policies ordinarily use more apt language. The failure to do so here constrains the belief that no such meaning was in the minds of either of the parties to this undertaking and consequently the limitation in question has no application.

In the second place the right of contribution sounds in equity and is invoked to do equity between the parties concerned. It is broader that a simple contractual obligation imposed or assumed by acts of said parties and is founded on something more than an implied contract, but rather on a duty, imposed by law and equity, to share equally the joint burden. It is therefore not within the language of the limitation here relied on—which must be strictly construed and refers only to obligations arising out of contract and out of nothing else.

An examination of the authorities in regard to contribution and the basis and reasons therefor leads to this conclusion. In Greenwald v. Weinberg, 102 Pa. Superior Ct. 485, Judge Linn says, speaking of contribution between two payees of a promissory note (p. 488) :

"Appellant's liability to plaintiff depends, not on the note or the endorsements under the negotiable instruments law but on his relation with plaintiff as joint payee . . . Their joint relation imposed equality of burden; either, compelled by a holder to bear it all, may require contribution of the other. . . . 'Contribution,' in the often quoted phrase of Lord Chief Baron Eyre, 'is bottomed and fixed on general principles of justice and does not spring from contract, though contract may qualify it . . .' (Dering v. Earl of Winchelsea, 1 Cox Ch. 318, 29 Eng. Rep. 1184) ; the obligation, it is said, arises from 'the equitable principle that

"in equali jure, the law requires equality. . . ." ' ": Wolmershausen v. Gullick, L. R. 1893, 2 Ch. 514, 522. That doctrine has so long been part of the law that persons engaged as co-obligors, in the absence of express understanding otherwise, are held to have dealt with it as an implied term in their relations."

See also Parker, to use, v. Rodgers et al., 125 Pa. Superior Ct. 48, where, at page 51, much the same language is used, although Judge Parker goes on:

"Where contribution is allowed among joint tort feasors after judgment recovered against them, the allowance is based not on the tort but arises by reason of an implied engagement of each to contribute on an equitable basis a sum sufficient to satisfy the judgment and to bear the common burden as reason and natural justice dictate."

In Armstrong County v. Clarion County, 66 Pa. 218, the opinion of the court quotes with approval the statement of Lord Chief Baron Eyre, above quoted in the excerpt from the opinion in Greenwald v. Weinberg, supra, and also quoted in Parker, to use, v. Rodgers et al., supra. From a careful consideration of these expressions it appears clear that the right of contribution between tortfeasors is founded on equitable principles and not on any contract and that the idea of an implied promise or undertaking on the part of a codefendant to pay an equal share of a judgment is but a fiction sometimes called into use in the enforcement of said right—but a means to an end—and is not the basis of the right itself.

Nor do we consider the language of Judge Trexler in Feldman et al. v. Gomes et al., 98 Pa. Superior Ct. 84, 86, at variance with the view above expressed. In the opinion, holding that the right of a codefendant who had obtained an assignment of the judgment in order to enforce contribution from the other codefendant could not be enforced by capias ad satisfaciendum, he uses language as follows:

"A co-defendant has a right to be relieved from the unjust position of paying the entire judgment recovered for the wrong done by both. *This is an application of equitable principles.* . . . As between the two defendants, the contribution is not a matter of recovery for a tort. It is a liability arising from an implied engagement to jointly contribute for the wrong done. It is a mere debt arising from an *equitable duty,* having none of the elements of a tort." (Italics supplied.)

Therein it appears that the right of contribution is founded on equitable principles—indeed we think it hardly necessary to have gone on any further to decide the question before the court as to the issuance of a ca. sa.—and not on any contract, even though it may be considered that there is an implied undertaking to perform the equitable duty in order properly and expeditiously to enforce performance of said duty.

All the more clearly does this appear from the statement in the opinion in Shillito v. Shillito, 160 Pa. 167, 170, quoted with approval in Friedman et al. v. Maltinsky, 260 Pa. 312, 317, as follows:

" 'The right to contribution in such case is founded upon equitable principles and was originally enforceable only in a court of equity. Now, however, it may be enforced in a court of law, if a contract to make contribution can be implied from the circumstances which create the common liability, as where one of two sureties is compelled to discharge their mutual undertaking to answer for the default of their principal. But a court of equity still has jurisdiction to enforce contribution, and in many cases it is the only court affording a convenient and complete remedy therefor . . .' "

This thought is further supported by the text writer Bispham in his work on Principles of Equity (10th ed.), sec. 328, where he says:

"The equity of Contribution arises when one of several parties who are liable to a common debt or obliga-

tion discharges the same for the benefit of all. It is founded not on contract, but on the general principles of justice stated above." And at section 329, as follows:

"No contribution could have been enforced at common law, and the relief given in equity was consequently based upon the general principle that no redress could be had elsewhere. Subsequently, however, the common-law courts began to administer relief by virtue of an implied assumpsit, and the *remedy* thus established has been applied, especially in this country, to most cases of contribution." (Italics supplied.)

See also Pomeroy, Equity Jurisprudence (5th ed.), sec. 1418, note, and Pomeroy on Equitable Remedies (2nd ed.), sec. 2338.

We have no doubt then that the obligation of contribution sought to be enforced in this proceeding and this fashion—which is sanctioned by the authority of Goldman et al. v. Mitchell-Fletcher Co., 292 Pa. 354, and subsequent cases—is not a liability imposed or assumed by Gaines by contract within the meaning of condition 3 (*a*) of the policy of insurance here involved —does not arise from a contract at all—but is imposed by principles of equity and justice and by operation of law entirely independent of any action in regard thereto on the part of the codefendants, Gaines and Shriver Company. The latter's claim against garnishee is therefore not barred by said limiting provision in the policy.

For the reasons above given we have concluded that the clauses of the insurance contract here in question must be construed and applied as indicated and that garnishee insurance company is liable to defendant Gaines for the sum due and owing by him on the judgment rendered in favor of plaintiff and against Gaines and the use-plaintiff. Said garnishee is, therefore, indebted to Gaines in that amount. As respects said amount we deem it clear that it is one half of the ver-

dict and interest thereon plus one half of the costs, upon which theory the præcipe for the writ of attachment execution was doubtless prepared. Apparently the figure $2,750.18 appearing therein as the real debt includes the verdict, interest thereon to March 28, 1934, and costs. Since no interest on interest or on costs can be collected by a successful plaintiff—and the Shriver Company, use-plaintiff, has the same standing as Walls, legal plaintiff, as respects the recovery permitted—the only additional interest to be included in the debt of garnishee to defendant is interest on one half the verdict from March 28, 1934, to date of payment. Consequently said debt owed by garnishee is $1,375.09, plus interest on $1,350 thereof from the above date.

Judgment is entered in favor of B. F. Shriver Company, use-plaintiff, and against Eagle Indemnity Company, garnishee. It is further adjudged that Eagle Indemnity Company, garnishee, is indebted to Richard Gaines, defendant, in the amount of $1,375.09, plus interest on $1,350 thereof from March 28, 1934, to date of payment; that B. F. Shriver Company, use-plaintiff, shall have execution of so much of said debt due by Eagle Indemnity Company, garnishee, to Richard Gaines, defendant, and attached in the hands of said Eagle Indemnity Company, as may satisfy the judgment of said B. F. Shriver Company against said Richard Gaines, with interest and costs; that if said Eagle Indemnity Company refuse or neglect, on demand of the sheriff, to pay the same, then the same to be levied of said Eagle Indemnity Company, its goods, lands, and assets, according to law, as in the case of a judgment against said corporation for its proper debt; and, further, that the said Eagle Indemnity Company be thereupon discharged, as against said Richard Gaines, for the sum so attached and levied of the debt and moneys in its hands.