[No. 24563. *En Banc.* April 2, 1934.]

JOHN SHAWCROFT *et al., Respondents,* v. STANDARD
ACCIDENT INSURANCE COMPANY OF
DETROIT, *Appellant.*[1]

[1]Reported in 30 P. (2d) 987.

*J. E. Stewart* and *Battle, Hulbert & Helsell,* for appellant.

*Clark W. Adams* and *A. Emerson Cross,* for respondents.

BEALS, C. J.—The Aberdeen branch of "The Salvation Army," a California corporation authorized to carry on its activities within the state of Washington, was named as the assured in an "automobile policy" issued by defendant, Standard Accident Insurance Company of Detroit. This policy protected the assured against certain liabilities which might be incurred by reason of the operation of a Ford delivery truck owned and operated by the assured in connection with its Aberdeen station.

In their complaint, plaintiffs alleged that one George Davey was an officer of the Salvation Army in charge of its headquarters in the city of Aberdeen, and that, among other duties, Mr. Davey operated the Ford truck which was the subject-matter of the insurance policy above referred to, using the same in connection with his employment; that, during the month of April, 1930, and while the policy of insurance was in full force and effect, Mr. Davey, accompanied by plaintiff Ada Shawcroft, undertook to drive the truck from Aberdeen to Montesano; that, while en route, the right front tire blew out; and that, as the result thereof, Mr. Davey lost control of the truck, which ran into a ditch beside the highway, throwing Mrs. Shawcroft out of the truck and seriously injuring her.

The complaint further alleged that, thereafter, the plaintiffs in this action sued Mr. and Mrs. Davey for damages suffered by Mrs. Shawcroft; that the defendants in the action were defended by the attorney for the defendant in this action; and that the trial resulted

in a verdict and judgment pursuant thereto in favor of the plaintiffs in the sum of twenty-five hundred dollars, which judgment has remained wholly unsatisfied because of the insolvency of Mr. and Mrs. Davey.

The plaintiffs further alleged that the defendant in this action, by reason of the delivery of its policy of insurance, is liable to plaintiffs under the policy, that the judgment in the action against Mr. and Mrs. Davey was a final determination of the amount of plaintiffs' damage and the extent of Mr. Davey's liability to plaintiffs, and that the judgment in the former action constituted an adjudication of the responsibility of the defendant in this action and the extent of its liability under its policy of insurance.

Finally, plaintiffs herein alleged a demand upon defendant for the payment of the judgment in the prior action, and its refusal to pay the same. Plaintiffs prayed for judgment against defendant for the amount of the judgment against Mr. and Mrs. Davey, together with costs in the former action and interest on the judgment.

Defendant answered plaintiffs' complaint, admitting the execution of the policy, but denying its liability thereon to plaintiffs. By way of an affirmative defense, defendant alleged that, at the time of the accident which resulted in Mrs. Shawcroft's injury, she was an employee of the Salvation Army, the named assured in the policy, and that the accident arose out of, and in the course of, the assured's business, profession and occupation; that the attorney who represented Mr. and Mrs. Davey on the trial of the action did so under a written agreement with them to the effect that the defendant herein might defend the former action without waiving any defense which it had under its policy of insurance; and that the defendant insurance company reserved the right to deny

liability to pay any judgment which the Shawcrofts might obtain.

The affirmative defense was denied by plaintiffs in their reply, and this action proceeded to trial, with the result that the court entered findings of fact and conclusions of law in plaintiffs' favor, followed by a judgment in accordance therewith, from which defendant appeals.

Appellant undertook the defense of the action against the Daveys after Mr. Davey wrote appellant the following letter:

"October 17th, 1930.
"Standard Accident Insurance Company,
"Detroit, Michigan.
"In re: John Shawcroft and Ada Shawcroft vs. George Davey and Mrs. George Davey.
"Gentlemen:
"I have been served with summons and complaint in the above entitled action and request you to defend the same for me. It is understood and agreed that you may defend said action without waiving any defenses which you may have under the policy of insurance No. JC-1176656 written by you in which the named assured is the Salvation Army; and it is understood that you reserve the right to deny liability to pay any judgment which may be obtained.
"Very truly yours,
"GEORGE DAVEY."

The following portions of the automobile policy which is the basis of this action are pertinent to this inquiry:

"DECLARATIONS

Item 1. Name Assured SALVATION ARMY (ENSIGN GEO. DAVEY, OFFICER IN CHARGE)
Residence Address (Street, Town and State)
Business Address No. 321 South 'G' Street, ABERDEEN, WASHINGTON
(Street, Town and State)

Assured's occupation is   Salvation Army

Individual, co-partnership, corporation   or   estate? Corporation.

Automobile Policy                    Number JC 1176656

"Standard Accident Insurance Company of Detroit, Michigan (hereinafter called the Company) Does Hereby Agree with the Assured named and described in the declarations forming a part hereof, as respects accidents occurring during the policy period stated in said declarations; by reason of the ownership, maintenance or use of any automobile;

"I.   A.   To Pay, within the limits specified in Item 5 of said Declarations, the loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, sustained or alleged to have been sustained by any person or persons as the result of such accidents.   .   .   .

"Insolvency and Bankruptcy

"VI.   The insolvency or bankruptcy of the assured shall not release the Company from any payment otherwise due hereunder, and if an execution on a judgment against the assured is returned unsatisfied, the judgment creditor shall have a right of action against the Company, subject to the terms and limitations of this policy, to recover the amount of said judgment.

"Additional Assured

"VII.   The term 'Named Assured' as herein used shall mean only the Assured named and described in Item I of said declarations, but the term 'Assured' shall include any other person while riding in or legally operating any such automobile and any other person, firm or corporation legally responsible for the operation of such automobile; provided: (a) Such automobile is being used with the permission of the Named Assured, or, if he is an individual, with the permission of an adult member of his household other than a chauffeur or domestic servant; (b) such other person, firm or corporation is not covered by any valid and collectible insurance against a loss covered by this policy; (c) the term 'Assured' shall not be held

to include any public garage, automobile repair shop, automobile sales agency, automobile service station, or any agent or employee thereof. It is further provided that any indemnity payable under this policy shall be applied first to the protection of the Named Assured and the remainder, if any, to the protection of other persons entitled to indemnity under the provisions and conditions of this paragraph.

"VIII. The Company shall not be liable under this policy for . . . (b) accidents to any employee of the Assured arising out of and in the usual course of the trade, business, profession or occupation of the Assured; . . ."

The judgment roll in the case of Shawcroft v. Davey was admitted in evidence, together with the instructions given by the trial court in that action, as was the testimony, except medical testimony concerning Mrs. Shawcroft's injuries.

Appellant assigns error upon the admission of certain testimony, upon the trial court's finding to the effect that respondent Ada Shawcroft was not at the time of the accident an employee of the Salvation Army, and upon the finding that Mrs. Shawcroft's injuries did not arise out of and in the usual course of the trade, business, profession or occupation of the Salvation Army, and finally, upon the entry of judgment against appellant.

Under § VIII of the policy, above quoted, appellant assumed no liability on account of "(b) accidents to any employee of the Assured arising out of and in the usual course of the trade, business, profession or occupation of the Assured," and in this connection appellant argues that, because of certain testimony introduced in the former action by the respondents in this action, and because of the instructions of the trial court given in that action, it must now be held, as matter of law, that it has already been adjudged that

Ada Shawcroft was at the time of the accident an employee of the assured.

Mrs. Shawcroft was a member of the Salvation Army in Aberdeen, and during the fall of 1929 undertook some duties in connection with the weekly distribution of ''The War Cry,'' the Army's official publication. She testified that Ensign Davey, who was in charge of the Army's activities at Aberdeen, requested her to do this, and that she was to dispose of four hundred War Crys a week (generally receiving ten cents apiece), for which she received a cent and a half a copy, or six dollars. She covered a district embracing Aberdeen, Montesano and some neighboring territory, and was engaged in the distribution of the papers three or four days during each week. The witness sold the War Crys, or gave them away if she could not sell the weekly quota. In the course of this work, she sometimes rode with Mr. Davey in his Ford, and sometimes went on stages, as happened to be convenient.

On the day of the accident, she started to Montesano with Ensign Davey, riding in his Ford, it being her intention to dispose of War Crys. In order to fulfill the duty of distributing War Crys, it was necessary, or at least usual, that the distributor be a member of the Salvation Army. The money received for the papers was turned over to Mr. Davey. The witness further testified that she was not obligated because of her membership in the Army to distribute the War Crys, but she undertook the duty at the request of her superior officer because she was interested in the work. She received her six dollars a week out of the returns from sales of the publication.

Appellant admits, for the purposes of this case, that the Daveys are insolvent and unable to satisfy the

judgment which Mrs. Shawcroft recovered against them. It is also admitted that, at the time of the accident, the automobile was being operated by Mr. Davey with the permission of the Salvation Army.

Appellant contends that Mrs. Shawcroft was an employee of the Salvation Army, and that the trial court erred in finding that the accident did not "arise out of and in the course of any trade, business, profession or occupation of the Salvation Army."

Respondents, while denying that the judgment in the former action between the parties is *res adjudicata* in this case, concede that the question as to whether or not Mrs. Shawcroft was an employee of the Salvation Army is here a proper subject of inquiry. Mrs. Shawcroft had been a member of the Salvation Army for almost thirty years, and had devoted much time and effort to the work of the organization. It is clear that she was to receive six dollars per week for disposing of the War Crys, whether she sold or gave them away.

The Salvation Army is a religious, charitable, eleemosynary institution, governed by officers occupying different grades and exercising authority appropriate to their rank. Mrs. Shawcroft stated that Ensign Davey had charge of the distribution of the War Crys in the Aberdeen territory, and that he, being unable to distribute them himself, asked Mrs. Shawcroft to assume that duty, to which she agreed. The distribution of this publication was part of the work of the Army, which received some direct financial benefit therefrom, its evangelistic purposes being also furthered thereby.

Respondents argue that, in her work, Mrs. Shawcroft was an independent contractor and not an employee. While she was not employed for any fixed

number of hours and the manner in which she disposed of her allotment of papers rested somewhat in the exercise of her best judgment, examination of the record convinces us that it must be held, as matter of law, that Mrs. Shawcroft was an employee of the Salvation Army. It is true, as argued by counsel for respondents, that no hard and fast rule exists by which all such relationships can be determined, but we are convinced that the question here presented, on Mrs. Shawcroft's own testimony, must be determined adversely to respondents' contention. *Simila v. Northwestern Improvement Co.*, 73 Wash. 285, 131 Pac. 831; *Burchett v. Department of Labor & Industries*, 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; *Wilson v. Times Printing Co.*, 158 Wash. 95, 290 Pac. 691; 14 R. C. L. 72.

In this connection, respondents' counsel propounded the following question to Mrs. Shawcroft: "Were you on your mission up here to dispose of 'War Crys' the day that you were injured?" to which she replied in the affirmative. After stating that, at the former trial, she had testified that the trip was just one of the Salvation Army duties, Mrs. Shawcroft, referring to her testimony on the former trial, said, "I did not say I am employed. I never thought of myself as an employee"; and again, "Whether I was or not, I do not know, but I never thought of myself as an employee"; whereupon the court asked the witness, "What did you think of yourself?" to which Mrs. Shawcroft replied,

"Well, I suppose it is an employee. I was asked to do it, and I was interested enough to do it. It benefited me and it benefited the Salvation Army."

Immediately thereafter, the following occurred:

"THE COURT: Could you have got that work, without being requested by him? A. Oh, no. I had to be

a Salvationist to do it. Q. You had to be a member of the Salvation Corps? A. Yes, and I testified on that, I have been a member twenty-nine years.

"THE COURT: But Mr. Davey determines who should do the selling? A. Well, if anybody asked him if I could. He just asked me and I was glad to do it. Q. Well, did he tell you where to sell them? A. In Aberdeen, Wishkah and Heron, and Market. Q. Well, did he tell you what part of Aberdeen to sell them in? A. Well, yes, in the business places and stores. If I did not sell them all, I could go to private homes. If I got out of them—. Q. (Interrupting) Well, did he tell you to come to Montesano and sell them? A. To take them down town for sale. Q. He asked you to come and sell them and take full charge of it in October or November, 1929? A. Yes, sir. Q. Did you have other people in your employ selling 'War Crys' beside yourself? A. Christmas time there was. When I was sick there was somebody doing it. Q. Outside of Christmas time, and when you were sick, did you have full charge of it? A. From that time, yes, unless I just asked somebody else to. I think not, because sometimes ten, or,— Q. (interrupting) But you had full charge of it did you not? A. Well, I did not have to send the money in. I sometimes,—I simply paid the money in to Ensign Davey. Q. MR. CROSS: He means full charge of the distribution. A. Well, I do not want to term myself,— (interrupting) If you say I had full charge,—They were not sent to me. Ensign Davey has the full charge,—the officer in charge. Q. It is his business to see that you sell and distribute? A. Well, he is the officer in charge and everything is his business. Q. He selects the one who sells the War Crys? A. Well, I guess. He did not make people to do it. Q. He is the one that picked out a certain person and asked them to do that? A. Yes, sir. THE COURT: You could refuse if you wanted to? A. Certainly I could. I had not been doing much before I was in Aberdeen, although I have been in the Salvation work for several years. I thought I would try and I was

able to do it. I was interested and did it. I would be selling them now, if I had not had the accident.''

██ In the next place, respondents argue that the accident did not arise ''out of and in the usual course of the trade, business, profession or occupation of the Assured.'' Section VIII of the policy, *supra*. Respondents argue that the Salvation Army has no ''trade, business, profession or occupation'' within the meaning of this clause. In the policy sued upon, the assured's occupation is stated as ''Salvation Army,'' and this statement in the policy, respondents contend, indicates that appellant at the time knew that the assured had no occupation.

Had it been considered at the time of the issuance of the policy sued upon that the assured had no ''trade, business, profession or occupation,'' doubtless the word ''none'' would have been written in the appropriate place following the query. The fact that the words ''Salvation Army'' were placed in the policy as above stated, indicates rather an affirmative than a negative. The word ''occupation'' is very broad in its scope. This word in Webster's International Dictionary is defined as follows:

''That which occupies or engages the time and attention; the principal business of one's life; vocation; employment; calling; trade.''

In the New Standard Dictionary the following definition, among others, is given: ''(1) That which principally takes up one's time, thought and energies; . . .''

Granting that the Salvation Army is not engaged in trade and that it has no profession, and without deciding whether or not it has a business, it must be held that its activities are described by the word ''occupation.'' While it is not conducted for profit,

but for the moral and material benefit of humanity, it accomplishes its purposes by means of an organization which maintains buildings for many uses, operates automobiles and employs in the aggregate a large number of persons. The distribution of the War Cry is one distinct element among many activities of the organization.

Giving respondents the benefit of a favorable construction of the policy sued upon, and taking judicial notice of the activities of the Salvation Army, with which all are familiar, it must be held that the Salvation Army has an "occupation." It engages in many activities, in connection with which it pays for time expended on its behalf as well as for items more tangible in their nature.

In the case of *Thurston County Chapter, American National Red Cross v. Department of Labor & Industries,* 166. Wash. 488, 7 P. (2d) 577, it was held that the American Red Cross was not an industry within the contemplation of the workmen's compensation act, and that the Red Cross was not engaged in "trade or business." Respondents rely upon this decision, which is, however, not in point here. Whether the Red Cross had an occupation, was not decided.

■ We are convinced that, under the circumstances disclosed by this record, appellant, because of the fact that it defended Ensign and Mrs. Davey in the prior action, is not foreclosed from resisting this action based upon the policy of insurance which it issued.

Expressing no opinion as to the effect of the record in the prior case between respondents and Ensign and Mrs. Davey upon the questions here presented, we hold that, from the record in this action, it clearly appears that respondent Ada Shawcroft was an em-

ployee of the Salvation Army, and that the accident which she was so unfortunate as to suffer arose out of and in the usual course of the occupation of the Salvation Army, the assured named in the policy upon which respondents seek to recover against appellant in this action.

The judgment appealed from is accordingly reversed, with instructions to dismiss.

STEINERT, TOLMAN, MAIN, MITCHELL, MILLARD, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent.

It has long been the rule in this state that insurance policies are construed most strongly in favor of the insured and against the insurer; *Buckley v. Massachusetts Bond & Insurance Co.*, 113 Wash. 13, 192 Pac. 924; and in *Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 294 Pac. 585, we held that, if an insurance policy is fairly susceptible of two interpretations, it would be liberally construed in favor of the insured.

We should not consider respondent, unversed in technical knowledge, bound by the answer she gave to the court that she supposed she was an employee. That is a mixed question of law and fact which is often vexing to the courts. Almost every case depends upon its own facts and circumstances.

The trial court found that the Salvation Army is a religious and charitable organization, operating without profit for religious and charitable purposes, and that it has no "trade, business, profession, or occupation" to which those words as used in the policy could apply.

We have said:

"Whether a person performing work for another is performing it as an independent contractor or as the

servant or employee of that other is a question not always easy of solution, but all of the authorities agree that the test of the relationship is the right of control on the part of the employer. Thus in 26 Cyc. 1546, an independent contractor is defined as follows:

" 'An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.' " *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861.

The sole duty of respondent was to distribute four hundred copies of the current weekly issue of the War Cry in the territory of Montesano at ten cents per copy, if she could get that sum, or if not, she agreed to give them away. For that she was to receive 1½c per copy, or a total of six dollars for each week's work, and was responsible only for the result.

Many cases are cited and could be discussed touching the question of employment and independent contract, but there is nothing in this case that makes respondent an employee any more than the ordinary newsboy who takes so many newspapers to sell on the streets and accounts for those sold and unsold. That certainly would not make a newsboy an employee of the publisher.

*Simila v. Northwestern Improvement Co.*, 73 Wash.

285, 131 Pac. 831, is quoted by appellant to the effect that

"If the employer may control the manner of doing the work, the relation of master and servant exists, no matter what terms may have been agreed upon as to the method of payment."

The test lies in whether or not the contract reserved to the proprietor the power of control over the employee. That is a correct statement of the law under our own decisions, but the court also there held, as we have often held, that an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work. We so decided in *Machenheimer v. Department of Labor and Industries,* 124 Wash. 259, 214 Pac. 17. The question was further discussed and the authorities reviewed in *Burchett v. Department of Labor and Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746, and the distinction made in *Swam v. Aetna Life Ins. Co.,* 155 Wash. 402, 284 Pac. 792.

In the case at bar, while it is true that respondent received a pittance every week for selling War Crys and could be discharged at any time her superior saw fit, no one controlled the manner in which she sold War Crys or assumed so to do. She had entire liberty of action in that respect. She was responsible only for the result of disposing of four hundred War Crys in her field of action. That being true, it seems clear that she was not an employee of the Salvation Army, but an independent contractor.

In addition to the *Glover, Simila,* and *Machenheimer* cases cited, *supra,* cf. *Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460; *Pyle v.*

*2-Miracle Concrete Corporation,* 126 Wash. 384, 218 Pac. 246, and *Wilson v. Times Printing Co.,* 158 Wash. 95, 290 Pac. 691.

The judgment should be affirmed.

BLAKE, J., concurs with HOLCOMB, J.