**MARYLAND CASUALTY COMPANY**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY.**

No. 15944.

United States Court of Appeals
Fifth Circuit.

July 20, 1956.

Rehearing Denied Sept. 10, 1956.

John R. Gilliland, Memphis, Tenn., William H. Maynard, Clarksdale, Miss., for appellant.

Don G. Owens, Memphis, Tenn., Semmes Luckett, Clarksdale, Miss., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is another of the increasing flood of cases in which liability insurers seek to escape judgment by claiming that another should bear the load. This frequently puts the assured, who through unusual prudence obtains two or more coverages, between the upper and the nether millstone and, in the place of the feeling of assurance (single or double) he finds himself facing not only the damage claimant with prospects of high judgment and cost, but a two, three or four-cornered free-for-all with as many underwriters whose only point of unanimity is: this policy doesn't apply *because* another (always a different company) does. This casts the insurers in strange and unique roles—echoing, for example, the refrain so often heard against them, that the policy, if ambiguous or of doubtful meaning, must be most liberally construed in favor of the assured. And, then, almost invariably, through the plea of subrogation, omnibus extensions or other accessible legal fictions, they then take upon themselves the garb of the assured, the injured party, or at least someone with an inviting equitable appeal.

We have that here: Kyle and his family Corporation, Kyle Manufacturing Company, obtained two separate policies, at least one—Maryland Casualty— on the strong representations by its agent that the other (Farm Bureau) policy did not afford coverage. An accident occurred. Kyle, his employee, Shull, and the Corporation were all sued, and after trial under full reservation of rights, a judgment had. Maryland, who alone insured the Corporation whose work alone was being done, contends that it owes nought because, to its fortune, Kyle was insured personally by Farm Bureau.

Kyle is a successful Mississippi planter with extensive agricultural operations. Thinking that, with growing mechanization on his plantations, it was good business to diversify, he organized a corporation, Kyle Manufacturing Company, in 1952, the stock of which was owned by his family but which was operated as a distinct enterprise in the manufacture of furniture. It was no mere hobby, and in the year prior to the accident, the Corporation, with a labor force of over twenty-five employees, had a volume of business approaching $200,000.00. Of course, such a business required transportation which Kyle, as the chief executive officer of the Corporation, determined would come from two sources: one, commercial over-the-highway carriers and, two, when the first were not available or suitable, any one or more of the large fleet of some thirteen motor trucks owned and used by him as a planter. This included, as most frequently used, the 1952 Chevrolet pickup truck involved in this accident.

Maryland was aware of these two distinct enterprises. At the time it began soliciting the Corporation's Workmen's Compensation business, its agent strongly advised Kyle to procure from Maryland a Comprehensive General-Automobile Liability Policy since, concerning the Corporation's regular use of the plantation's trucks, he warned, "well, you are not covered on trips that the factory might be involved in." Whether he got this or something else, Kyle's purpose was plain for, " * * * it was agreed that he [Maryland's agent] would write a policy covering trips involving Kyle

Manufacturing Company." The policy was issued and it insures the Corporation's legal liability for damages occasioned by the use or operation of automobiles whether owned, hired, or borrowed.

In the meantime, Kyle, individually, continued his longtime practice, known to Maryland, of insuring his farm fleet with Southern Farm Bureau Casualty Insurance Company. Except for the two Buick sedans declared to be used as "B & P" (business and pleasure), all of the vehicles were listed as "Comm." (commercial).

On November 24, 1953, the Corporation needed to obtain some supplies at Tullahoma, Tennessee. Kyle, as he normally did, made the pickup available along with Shull, one of his farm employees. The arrangement was for the Corporation to pay for all-out-of pocket expenses of operation. On this corporate trip the accident occurred with serious injuries to third parties. This was, by all tests business and legal, the Corporation's business and the Corporation's liability. Kyle in his individual capacity had nothing to do with this. To be sure, the truck was his, Shull was in his normal general employ. But used here on corporate business, at corporate expense, under corporate control, operation of the truck was not his personal responsibility.

He was, however, dragged into this by Maryland who, to escape an otherwise clear obligation under its policy to defend and indemnify, urged that by other express terms of its policy, it was not to be liable for non-owned [1] vehicles if other valid and collectible insurance [2] was available. In the exploratory probing for "other insurance", carried on with relative safety [3] from knowledge that it was quite unlikely that any "other" insurer could turn the tables on it, Maryland's Geiger counter shortly reacted when it turned up Kyle's Farm Bureau Policy. What made the Farm Bureau Policy such a strike was the traditional Omnibus Clause [4] extending, in effect, the insur-

---

1. While this was a business transaction and not a mere personal gratuity, the truck was a "non-owned" rather than a "hired" automobile under the policy definitions:

"3. Definitions.

"(b) * * * 'automobile' means * * *:

"(1) *Owned Automobile*—an automobile owned by the named insured;

"(2) *Hired Automobile*—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

"(3) *Non-Owned Automobile*—any other automobile."

2. The decisive clause in Maryland's policy is:

"13. *Other Insurance*. If the *insured* has *other* insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible

insurance against such loss; provided, however, the insurance under this policy *with respect to loss* arising out of the use of any *non-owned* automobile shall be *excess* insurance over any other *valid* and *collectible* insurance *available* to the *insured*, either as an insured under a policy applicable with respect to such automobile or otherwise." (Italics supplied)

3. The omnibus and drive-other-car clause of Maryland's policy expressly excluded coverage with respect to the owner (Kyle) or any employee (Shull) of such owner of any hired automobile or with respect to any non-owned automobile if owned by an executive officer of the named assured. Kyle fit all of these categories.

4. The Farm Bureau Policy provides:

"III. Definition of 'Insured'.

"The unqualified word insured, wherever used in Coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes *any person* while using the automobile *and any person or organization* legally *responsible* for the use thereof, provided the actual use of the automobile is with the *permission* of the named insured.

ance to persons using the automobile with the permission of the named insured or an organization legally responsible for such use.

On it, Maryland then argued that since the truck was being used by the Corporation with permission of the named insured (Kyle personally) the Corporation is automatically included as an additional insured and, if there is any reason why it is not so directly, it actually has the same status since Shull was, without a doubt, using the truck with Kyle's consent and the Corporation, his temporary employer, would be a "person or organization legally responsible for the use thereof." Finally, it says, the Corporation as its assured undertook further to subrogate [5] Maryland to all of the Corporation's rights which, it then says, would include an action by the Corporation against its borrowed servant Shull at which time, it

is claimed, Shull could call on Farm Bureau as an additional assured under Kyle's policy.

At this point, of course, Farm Bureau reacts with traditional defensive reflex and insists that *Omnibus* is something less, not because of its terms but because, contrary to the policy requirements,[6] the accident or occurrence was not sustained while the truck was being used for the purpose stated in the declarations. Obviously, as the next step, Farm Bureau points to the unquestioned fact [7] that the truck was declared to be for "Commercial use" and under the circumstances of this case, operation of this and Kyle's other trucks by the Corporation was not an " * * * occasional use for * * * other business purposes * * * " as the policy terms[8] alone permit.

The insurance under this paragraph with respect to any person or organization other than the named insured or spouse does not apply:" [Here follow several immaterial exceptions] (Italics supplied)

5. "14. *Subrogation.* In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

6. "IX. Policy Period, Territory, Purposes of Use. This policy applies only to accidents or occurrences which take place and to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is * * * owned, maintained, and used for the purposes stated as applicable thereto in the declaration."

7. The difficulty of allowing an underwriter such as Maryland to become the vicarious assured is well illustrated here. Farm Bureau and Kyle, its real assured, are in harmonious, contented agreement that the pickup truck was declared as "commercial." Maryland, an outsider, seizing upon the absence of a place for specifying the purpose (B & P or Comm.) in the Transfer Endorsement Form used when the pickup was purchased a few weeks after the policy was issued, con-

tends vigorously that the commercial purpose was never declared. Neither Omnibus nor subrogation should be available to allow an interloping stranger to remake the bargain or say what has been agreed upon.

8. The declarations, attached to the policy, showed S. H. Kyle as the assured, "Occupation—planter." The trucks were all listed as "Comm." meaning commercial. It provided, "5. *Coverages*—the insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. * * * "

The critical clause is Item 10(a): " 'Pleasure and business' means personal, pleasure, family and business use. (b) 'Commercial' means used principally in the business occupation of the named insured including *occasional use* for personal, pleasure, family and *other* business purposes. (c) Use of the automobile includes loading and unloading thereof." (Italics supplied) Almost the identical language is found in paragraph 3(e) of Maryland's policy.

Clause 18 of the policy states: "18. *Declarations.* By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."

■ On this phase, which presented a fact issue, the Court heard evidence and arrived at a finding which is certainly not clearly erroneous, Fed.Rules Civ. Proc. 52(a), 28 U.S.C.A., under the tests we follow, e.g., Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217; Griffin v. Kelley, 5 Cir., 227 F.2d 258; Des Isles v. Evans, 5 Cir., 225 F.2d 235; Western Cottonoil Company v. Hodges, 5 Cir., 218 F.2d 158; Williams v. Cambridge Mutual Fire Insurance Co., 5 Cir., 230 F.2d 293; Sanders v. Leech, 5 Cir., 158 F.2d 486; United States v. Gallops, 5 Cir., 207 F.2d 48; Atwood v. Kleberg, 5 Cir., 163 F.2d 108. Whether it was an "occasional use" was for the Judge to decide on the total evidence and not on isolated bits of testimony which these skilled advocates with commendable resourcefulness and all propriety, Leon Bernstein Co. v. Wilhelmsen, 5 Cir., 232 F.2d 771, 1956 AMC 754, cast in the rubric of the policy.

The Judge was impressed, as are we, with the uncontradicted fact that transportation was known to be an indispensable need of the Corporation. Whenever and wherever it needed it, and commercial haulers were unsuitable or unavailable, it regularly called on Kyle to furnish his trucks. An important phase of the Corporation's activity was based upon the expectation of using Kyle's trucks and the certainty that they would be available. It was, to Corporation and Kyle alike, a definite, known, reliable business-like arrangement. Operation of vehicles to fill a known, expected, recurring, anticipated necessity, counted on by both parties, is certainly not occasional.

■ When the truck was used for a purpose not within the policy (because beyond the scope of the permissible "occasional use") the accident or loss was not sustained while the vehicle was being used for the purposes stated in the declaration. Although the language is extremely broad and on this type of declaration, to establish that it is an exposure to risks beyond those contemplated by the underwriter, takes the form of showing that the operation violated Paragraph 10(a) (note 8 supra), courts are not free to extend coverage to risks and circumstances not covered by the contract,[9] see Williams v. American Automobile Insurance Company, 5 Cir., 44 F.2d 704; C. E. Carnes & Co. v. Employers' Liability Assurance Corp., 5 Cir., 101 F.2d 739; Farm Bureau Mutual Automobile Insurance Company v. Daniel, 4 Cir., 104 F.2d 477. Obviously use of a truck for general hauling for a commercial manufacturing concern is, or may be, much different from a rural, farm, plantation operation. At least that is to be assayed by underwriters whether they sit at Lloyd's Coffee House or at the office of Southern Farm Bureau in Jackson, Mississisppi.

Since both Shull and, through him, the Corporation were operating the truck for a non-occasional use, the Omnibus Clause, cf. Georgia Casualty Co. v. Waldman, 5 Cir., 53 F.2d 24, did not give them greater standing as an assured than Kyle himself, or avoid the impact of Paragraph IX, (note 6, supra) of the policy.[10]

The judgment was right, it is

Affirmed.

9. We emphasize that this case does not decide the right of an injured party to pursue either one or both of these insurers nor the position of Kyle or the Corporation, as assureds, *vis-a-vis* their respective insurers. The former frequently have by statute or decision the standing of a third party beneficiary and the latter are, of course, parties to the contracts. Maryland has no such status here.

10. As to the circuitous argument that the Corporation could sue Shull who could call on Farm Bureau for defense and indemnity, we think this has been answered by what we have said, and the further comment that this is not *insurance* "available to the insured" (the Corporation) under Paragraph 13 (note 2 supra) of the policy. It is at most a claim by the Corporation, not under insurance, but on principles of tort and master and servant law. For all we know, were Shull sued, Farm Bureau would dredge up some insurance policy by still a "third" insurance company. and since its other-car extension is, like Maryland's, an *excess* (not contributory) coverage, we would start this business all over again.