**AMERICAN FIDELITY & CASUALTY COMPANY, Inc., Appellant,**

v.

**ST. PAUL–MERCURY INDEMNITY COMPANY, Appellee.**

No. 16441.

United States Court of Appeals
Fifth Circuit.

July 26, 1957.

Rehearing Denied Oct. 9, 1957.

---

2.  Ch. 89, S.L.A.1949.

510

Fred Ball, Montgomery, Ala., for appellant.

Harold Williams, Birmingham, John W. Pemberton, Montgomery, Ala., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

On facts, strikingly simple, neither complex nor conflicting, we have again the problem of an Insurer who has written the policy and taken the Assured's premium urging him to go elsewhere, tentatively if not finally, because another insurer is, or ought to, or may be, liable for the whole, half, or part a loaf. In the process the moving Insurer generally garbs itself in the appealing robes of some assured so that, casting itself in a strange role, it asserts what it so often

denied that the policy should be liberally construed and, by a bare toe hold manages to make itself enough of a party to force a construction of another contract made by another insurer with another assured and which, under no circumstance, was made for its benefit, Maryland Casualty Co. v. Southern Farm Bureau Casualty Insurance Co., 5 Cir., 235 F.2d 679; United Services Automobile Association v. Russom, 5 Cir., 241 F.2d 296; General Insurance Co. of America v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289; Continental Casualty Company v. Suttenfield, 5 Cir., 236 F.2d 433.

So it is here. Coming as it does the accident and the assureds seem all but forgotten as the two Insurers match clause against clause, coverage against exclusion, claim against denial, in this battle between fortuitous adversaries.

Osborne, a contract carrier, was the leased (chartered) owner of the truck in question. Estes was his driver. American Fidelity & Casualty Company, Inc. (American) was Osborne's Insurer.

Estes drove the truck. While the truck was being unloaded by an employee of Larsen & Larsen, Inc., a consignee at its job-site, Estes was injured when the Larsen employees negligently allowed a heavy piece of the truck's cargo to fall on him.

Estes sued Larsen who called on its Insurer, St. Paul-Mercury Indemnity Company (St. Paul) to undertake the defense under its Comprehensive General and Automobile Liability Policy[1] (ACP Form). The occurrence, the injury, the amount of the claim were clearly within the broad coverage of the St. Paul policy. Up to this stage, St. Paul had a plain obligation to defend and indemnify Larsen.

By the fortuitous circumstance that the accident occurred in Alabama where the legal issue was not categorically foreclosed, Osborne had an automobile policy[2] with an Omnibus[3] Insured clause and a pro rata, rather than excess, Other Insurance clause, and the unloading of the truck constituted a use[4] of it with Osborne's permission, St. Paul

---

1. Larsen & Larsen, Inc. was a named insured. For bodily injury with limits of $500,000/$1,000,000, at an estimated annual premium of $1435.89, Larsen was insured under this broad form:

   "I. Coverage A—Bodily Injury Liability. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law or contract for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons."

2. The American form was captioned "National Standard Automobile Liability Policy." With limits of $100,000/$300,000 it provided:

   "I. Coverage A—bodily injury liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

3. The American policy provided (emphasis supplied to pinpoint the problem):

   "III. Definition of 'Insured'. The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the *named insured* and, except where specifically stated to the contrary, *also includes* any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization *other than* the *named insured* does not apply:

   "(a) to injury to or to death of any person who is a named insured;

   \*    \*    \*    \*    \*

   "(d) to any *employee* with respect to injury to or death of another *employee* of the *same employer* injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of *such* employer."

4. American policy definition, Item 5: "(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

made the now familiar, but understandably surprising announcement to its Assured Larsen that it, St. Paul, did not owe Larsen, its Assured, the obligation to defend or indemnify because someone else—a party with whom Larsen had no contractual relationship whatsoever—American was obliged to defend. St. Paul claimed the right to do this under the "Other Insurance" endorsement [5] of its policy.

But at this stage, St. Paul had no rights whatever under American's policy. St. Paul was not a party to it, and American had made no agreements whatsoever with St. Paul that it would, or would not do, anything. St. Paul was a complete total stranger. St. Paul then had no subrogation rights, for by a special endorsement, as between Larsen and itself, those arose only "In the event of any payment under this policy" which had not, then or now, ever been made.

Still an interloping stranger, St. Paul called on American to defend and this was declined. Whether St. Paul was right or American was right on the construction of the Omnibus and the Employee Exclusion clauses [6] of American's policy was, as between St. Paul and American, an academic matter only. St. Paul could not then demand anything from American and on American's refusal to abide with any demand, St. Paul

had no legal right to vindicate. All it had was a *defense* as between itself and its own assured, Larsen, that since American's policy was available to Larsen as an omnibus assured, the St. Paul policy did not apply.

This did not change when St. Paul instituted this declaratory judgment action against Larsen, Osborne, American and, for good measure, under the anonymity of John Doe and Richard Roe, the four or five manual labor employees of Larsen whose negligence caused Estes' harm and brought into play St. Paul's obligation to defend those very acts. This did present a justiciable controversy between St. Paul and Larsen. But neither Larsen nor his allied John Does and Richard Roes sought any relief by answer, cross claim, or otherwise, against American (or Osborne). So, while American was in the suit and answered, as a substantive matter it was a jousting between two entirely unrelated strangers, foreign to each other, and having no common source by legal fiction or otherwise.

This posture is important for it keeps in sharp focus that in the interpretation of American's policy (and the Employee Exclusion, note 6, supra) this must be viewed entirely in the light that this is related to the *defense* which St. Paul urges against its own Assured,

---

5. St. Paul's standard form was modified by an endorsement which stated:

"If there exists at the time of occurrence other insurance under the terms of which the Named Insured is entitled to protection and coverage, then the coverage provided by this policy shall be excess over and above such other good, valid and collectible insurance. If, because of exclusion, limitation, denial of liability or otherwise, coverage under such other insurance be unavailable to the insured named hereunder then this policy shall, subject to its terms, conditions and limitation, operate as primary insurance for the protection of the Named Insured."

The first sentence of the above endorsement is the standard language of the policy. The second sentence, added by endorsement, markedly changed it in the Insured's (Larsen) favor from a stand-

ard of "valid and collectible insurance" to insurance "unavailable" by reason of "*denial* of liability or otherwise," which, of course, American did and still does.

6. American's policy under the general Exclusions stated:

"This policy does not apply:

"(d) * * * to bodily injury to or death of *any employee* of *the insured* while engaged in the employment * * of the insured, or while engaged in the operation, maintenance or repair of the automobile;

"(e) under coverage A [bodily injury], to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law." (Emphasis supplied.)

American's position was that Estes was an employee of Osborne, the named Insured, hence there was no coverage.

Larsen. The process works this way: (1) St. Paul is not obligated to defend Larsen if Larsen has other insurance; (2) Larsen has other insurance because (a) it is an Omnibus Assured and (b) the Employee Exclusion in that "other" policy does not apply.

In this sole controversy then pending, St. Paul neither has nor acquired (by subrogation or implied anticipatory assignment) the status of a vicarious assured under American's policy. St. Paul then fails in the effort to reap the tactical or strategic advantages which often prevail in construing the policy most favorably to the assured. And, as a complete stranger, in assaying the defense between it and its assured, Larsen, St. Paul's position is neither that of an assured (named or omnibus) who has paid a claim and seeks indemnity, or a third party judgment creditor claimant, with all of the favored status which that position may give, Maryland Casualty Co. v. Southern Farm Bureau Casualty Insurance Co., supra, seeking satisfaction of the judgment after compliance with the no action clause of the policy. Section 12, Title 28, Alabama Code of 1940; Employers Ins. Co. of Alabama v. Johnston, 238 Ala. 26, 189 So. 58.

What we are saying is simply this: this is not a suit between an insurer and the assured, or one who under state statutes or procedures is deemed a third party beneficiary of the contract. Principles of construction may well be far different as to those cases, and as to those this opinion expresses none. This is simply and solely a case in which, in determining the application of one contract between the parties (St. Paul v. Larsen), it is necessary to construe another contract between entirely different parties (American—Osborne).

This has crucial importance for there is then no basis for reading into that "other" contract words or clauses to make it better or more reasonable for one of the parties to it. And, on the contrary, there is every reason that it should be interpreted and applied as written, and if the words used cover, they should be applied even though the result might be less favorable to one of the parties to that contract, but who is nonetheless now quite satisfied with it.

In this light, the American policy, uses language which is plain and direct. After expressly stating, note 3, supra, that the term "Insured," with respect to these coverages, "includes the named insured" (Osborne), the policy uses equally simple, plain language in excluding liabilities. In peremptory terms it declares, note 6, supra, that "This policy does not apply." And it then proceeds to state emphatically that it does not apply whatsoever to "bodily injury to * * * any employee of the insured while engaged in the employment * * * of the insured * * * ."

Estes was an employee of the insured, Osborne. Estes was subject to the Alabama Workmen's Compensation Act, Code 1940, Tit. 26, § 253 et seq., and received compensation under it. And Estes admittedly sustained his injuries " * * while engaged in the employment * * of the insured * * * ."

The District Judge, 146 F.Supp. 39, 43, concluded that the "better existing authority * * * is * * * that the proper construction of the words 'the insured' contained in exclusion clauses (d) and (e) [note 6, supra] * * * exclude coverage only in those cases in which the injured party is an employee of the insured claiming coverage under the policy, whether such insured be the named insured or an additional insured under the omnibus clause * * * ."

We think that as to this controversy and for Alabama [7] his conclusion was erroneous.

The Erie handwriting on the wall, while leaving some for a Daniel's read-

---

7. We sound a special caveat, implied in every diversity case, that this is for Alabama alone and does not bind the Court as to any other state, since as to one state, Louisiana the result, binding on us, would be to the contrary. Pullen v. Employers' Liability Insurance Corp., 230 La. 867, 89 So.2d 373.

ing, reveals enough to us to indicate the probable course Alabama would take. [Erie L. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]. The act of Erie judging requires that we pursue it. West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139; Six Companies of California v. Joint Highway Dist. No. 13, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114.

Adhering to the traditional view that as between insurer and assured, terms of doubtful, double, or ambiguous meaning are to be liberally construed, Alabama yet makes it clear that insurance policies, as any other contract, are to be interpreted to effectuate the intention of the parties as expressed by the words used. We have recently considered this at length, Ward v. State Farm Mutual Auto. Ins. Co., 5 Cir., 241 F.2d 134, 137:

" * * * the pole star by which we are to be guided in construing the policy is * * * the intention of the parties. The pertinent rules of construction have been well set forth by the Supreme Court of Alabama.

" 'Insurance policies, as a general rule, should be liberally construed, and the language used in them should usually be given its ordinary common interpretation. No strained or unusual construction should be given to any of the terms of a policy of insurance, in favor of the insurer or of the insured * * *.' Empire Life Ins. Co. v. Gee, 178 Ala. 492, 60 So. 90, 92.

" ' * * * the words of the policy must be given the meaning which they ordinarily bear, and, where it is manifest, * * * that the intention of the insurer and the insured was that liability should attach only

in given circumstances, the law will uphold the contract according to its true intent and import.' Kilby Car & Foundry Co. v. Georgia Casualty Co., 209 Ala. 356, 96 So. 319, 320.

" ' * * * The true intent governs insurance contracts the same as others. * * * no strained construction should be indulged to raise doubt.' Home Loan & Finance Co. v. Fireman's Fund Ins. Co., 221 Ala. 529, 129 So. 470, 471. * * * .

" ' * * * In ascertaining the intent of the parties the language of the policy will be given its common interpretation, and only clauses which are uncertain will be construed favorably to the insured.' The Praetorians v. Hicks, 234 Ala. 451, 175 So. 258, 259."

In McDowell v. United States Fidelity & Guaranty Company,[8] 260 Ala. 412, 71 So.2d 64, 69, involving employee exclusions quite comparable to those here, the Supreme Court of Alabama reiterates the rule that "the contract made by the parties shall prevail, and no new contract [shall] be interpolated by construction. [and] 'Provisions clearly disclosing their real intent are not to be given a strained construction to raise doubts where none reasonably exist.' " Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425, 426. And the Court " * * * cannot by construction do violence to the language of the policy or read into it something that is not there. The language, 'The insurance does not apply', can carry no other meaning." McDowell v. United States Fidelity & Guaranty Co., supra. Of course, the words of American's policy "This policy does not apply," supra, is but a paraphrase.

That there is a sharp division [9] in the authorities indicating arguments that

---

8. This case involved an employee suing another employee of the same, named assured claiming the benefit as an Omnibus Insured excepted from the omnibus protection by Par. III(d) of American's policy, note 3, supra.

9. The cases are well collected in Annotation, 50 A.L.R.2d 97, § (6) (a). Many of these authorities and the arguments, pro and con, are well canvassed by Risjord and Austin in "Who is 'the insured'?", 24 University of Kansas City

may be made on both sides does not lessen the necessity of Alabama having to make a choice. And, for Alabama, we must do the same.

■ When it comes to assaying intent, we are looking at the contract through the eyes of Osborne and American. They are the parties to the contract. Of course, when the facts occur as to any one incident to give him that status, an Omnibus Assured is the beneficiary of the contract and for that occasion is a party to it. But his amorphous nature, the fact that never, or seldom, is his identity known or ascertainable in advance, keeps him from being a party whose "intention" as of the inception of the policy may be taken into account. He enters the initial picture only insofar as the named assured and insurer determine the circumstances under and the extent to which they mutually intend that such third persons are to be extended benefits. This has wisdom for, unlike the argument made by American that the named assured cannot have intended to give the Omnibus Assured insurance without cost, there may be a substantial advantage to the assured and which the insurer takes into account as

Law Review 65 (1955). The article is primarily to shore up the authors' conclusions that the new (1955) standard clause, apparently now in general use:

"Severability of Interests: The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.'"

does not expand coverage because it has always been the *underwriter's* intent that the Employee Exclusion clause should be construed as limiting it to an employee of the particular insured (named or omnibus) claiming the coverage. Exercising the advocate's privilege of asserting what the law ought to be, rather than what it is, the authors candidly acknowledge that their thesis is followed in the Ninth Circuit and Wisconsin (and since publication Louisiana joins their ranks), but is rejected in Mississippi, New York, South Dakota and Washington with adverse indications in Kansas and Rhode Island.

Cases either holding or indicating that the policy does not cover suits by an employee of the named insured against an Omnibus Assured: Greaves v. Public Service Mutual Ins. Co., Sup., 156 N.Y.S. 2d 754; Standard Surety & Casualty Co. of New York v. Maryland Casualty Company, 281 App.Div. 446, 119 N.Y.S.2d 795, appeal denied 281 App.Div. 1069, 121 N.Y.S.2d 767; Birrenkott v. McManamay, 65 S.D. 581, 276 N.W. 725; Associated Indemnity Corp. v. Wachsmith, 2 Wash.2d 679, 99 P.2d 420, 127 A.L.R. 531; Shawcroft v. Standard Accident Ins. Co., 177 Wash. 106, 30 P.2d 987; *Continental Casualty Company v. Pierce, 170 Miss. 67, 154 So. 279; *Gibbs v. Employers Mut. Liability & Ins. Co., 224 N.C. 462, 31 S.E.2d 377; Webb v. American Fire & Casualty Co., 148 Fla.

714, 5 So.2d 252; *American Fidelity Co. v. Deerfield Valley Grain Co., D.C. Vt., 43 F.Supp. 841; Pearson v. Johnson, 215 Minn. 480, 10 N.W.2d 357; Elliott v. Behner, 150 Kan. 876, 96 P.2d 852; Connelly v. London & Lancashire Indemnity Co. of America, 68 R.I. 446, 28 A.2d 753, 29 A.2d 540.

Cases either holding or indicating that the policy does cover suits by an employee of the named insured against an Omnibus Assured: Lumber Mutual Casualty Ins. Co. of New York v. Stukes, 4 Cir., 164 F.2d 571; *Kaifer v. Georgia Casualty Co., 9 Cir., 67 F.2d 309; Pullen v. Employers' Liability Insurance Corp., 1956, 230 La. 867, 89 So.2d 373; Pleasant Valley Lima Bean Growers & Warehouse Association v. Cal-Farm Insurance Co., 1956, 142 Cal.App.2d 126, 298 P.2d 109; Ginder v. Harleysville Mut. Cas. Co., D.C.Pa., 49 F.Supp. 745, affirmed, 3 Cir., 135 F.2d 215; Motor Vehicle Casualty Co. v. Smith, 247 Minn. 151, 76 N.W.2d 486; *New v. General Casualty Company of America, D.C. Tenn., 133 F.Supp. 955; Farm Bureau Mut. Auto. Ins. Co. v. Smoot, D.C.W. Va., 95 F.Supp. 600. Wisconsin cases rest heavily on a special statute, discussed, Sandstrom v. Clausen's Estate, 258 Wis. 534, 46 N.W.2d 831; McMann v. Faulstich, 1951, 259 Wis. 7, 47 N.W.2d 317; Zippel v. Country Gardens, Inc., 262 Wis. 567, 55 N.W.2d 903; Shanahan v. Midland Coach Lines, 268 Wis. 233, 67 N.W.2d 297; *Narloch v. Church, 234 Wis. 155, 290 N.W. 595.

*NOTE: These cases involve cross-suits by one employee against a fellow employee having a status of Omnibus Assured as to which Omnibus coverage is now expressly excluded under Par. III (d), note 3, supra. In some it is incidental.

an underwriting factor in making the insurance available to others. One benefit is that the endless variables of the business world, the ambiguous, if not sometimes ambiguous amphibious, uncertainties of the status of employees, independent contractors, invitees, licensees, joint venturers, lessees, managing agents, or the like, frequently involve the named assured in litigation which is really not his. Often this is because of the lack of, or gaps in, insurance of these others. The omnibus coverage, like a liberal sprinkling of joint assured endorsements, eliminates the unseemly contention, strife and litigation between those engaged in a cooperative business project or transaction.

But even here it is tested from the named assured's interests and needs. And unless words in their common, plain meaning drive one to such a construction, it is hardly to be expected that in the process of determining the circumstances under which it is advantageous to him to make insurance available to others, the named assured would be establishing insurance coverage that was increasing, not decreasing, his cost or exposure, was duplicating, not simplifying, his insurance program. Yet that is where we are in this case.

At the inception, a business assured, like Osborne, has two primary fields of exposure: (1) to employees; and (2) to third parties, members of the public and persons not in the status of employees. The two present different hazards of frequency and severity and traditionally are underwritten separately. The first group is cared for by Employers Liability insurance which, includes as well, if applicable, state or federal workmen's compensation coverage. This insurance is carefully limited to persons in the status of employees and excludes all others. The second group is cared for by Public Liability coverage, either for general operations as Larsen's CGL policy, or specifically in connection with automobiles as in American's automobile policy. These invariably exclude employees of the assured and, to eliminate any doubts, exclude liabilities imposed under workmen's compensation acts. The obvious result is that the prudent business man obtains two types of insurance and, of course, pays two premiums.

Since, for business men, if not for the general public, business and law have long abandoned the naive idea that the payment of losses are "free" to the assured, the purpose of an assured to integrate his program and reduce cost is thwarted if the policies, so carefully dovetailed, are construed to duplicate coverage. In this sense it is not a matter of the legal concept of liability (master-servant compared to third party), or the coincidence that an employee may be able to contrive a third party relationship on which to base a damage suit. The thing of importance is that for an injury received in the course of the named assured's employment, his employee is enabled to recover ultimately from the employer's Public Liability insurer (and hence him), the very kind of losses or damages which the assured has paid another to underwrite.

Of course, these payments must ultimately come from somewhere, and it is the fact of business life that claims paid will, as they must, someday come from the assured's pocket. Especially is that so where, as both American and Osborne so vainly [10] sought to establish as a fact

10. Illustrating the vice of attempting to construe these policies through the rose-colored glasses of a hopeful, needy stranger (St. Paul), the District Court, presumably because he thought it was altering a written contract, declined to allow Osborne and American to prove that simultaneously with the delivery of the American policy, a retrospective claims experience premium plan was agreed to between them by which Osborne in effect bore all or a substantial part of his own losses. As this did not involve a subsequent attempt to alter existing obligations to adversely affect the intervening interests or rights then accrued of a third party (e. g., third party injury claimant), the parties were, of course, free to make whatever agreements they wished as between themselves even though it might have the effect of modifying the contract (the policy) just made.

here, policies today are written frequently on retrospective rating plans, direct cost of claims plus administrative overhead, or the like, in which it is the assured's money from beginning to end.

Since Osborne obtained and paid for Employers Liability coverage, is it likely that for injuries to these employees while in his service, he *intended* to provide and pay for more? The only reason advanced here by the interloping St. Paul is that unless the policy is so construed, it produces an anomaly in *another* situation. The argument runs like this: to deny coverage for this situation means that "the insured" in the Employee Exclusion clause, note 6, supra, must be interpreted to read as though the italicized words were added, "the insured, *named or omnibus.*" In such event, for a suit by an employee of an omnibus assured (e.g., one of Larsen's employees) against the named assured (Osborne), there would be no coverage since such suit would be by an "employee" of an "insured."

Of course, this is a beguiling mirage. It is in fact quite different. For in the analysis of the employer's (assured's) needs, this is a case of a third party making a traditional public liability claim. This is the very purpose for the insurance. It would be surprising to interpret the language to deny altogether the coverage sought at the very time it was most needed.

Giving ground as common sense obviously compels on this, St. Paul then suggests that to avoid this result, it means that the term "the insured" in the Employee Exclusion would have to be interpreted as though it read "the *named* insured." On that, St. Paul contrives another windmill to tilt by pointing out that this would then *extend* the coverage to a suit by an employee of an omnibus assured against the omnibus insured. Of course, no one could think that this would be permitted.

The trouble with this reasoning is that its strength lay in the claim that it is the only way consistently to avoid absurd results in other situations. We would think that to avoid absurd results, a Court could do so directly without any incidental (and accidently beneficial) excursions around Robin Hood's barn.

Finally, St. Paul unavoidably commits itself to the curious argument that since, to avoid the result of Kaifer[11] v. Georgia Casualty Company, 9 Cir., 67 F.2d 309, and others like it (questioned by us in Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22) which produced a result so contrary to the purpose of the contract that the standard policy was modified by introducing the cross-employee exception in the Omnibus Clause, Par. III(d), note 3, supra, the amendment was actually not necessary if the policy is construed as we do. For in such a case, whether a suit by one employee against another fellow employee of the named assured, or by one employee against another fellow employee of an omnibus assured coverage would be excluded simply because of the status as such an employee. As a conceptual matter, this may be appealing. But it hardly has much impressiveness since the policy was amended to deal with the fact that from the point of view of underwriting intent apparently too many courts were too misguided.

In the posture of this case, we see no reason why "employee of the insured" should be interpreted to take from it one (Estes) who was in fact such an employee and who, while acting as such, was injured. The policy, thus construed, gives full voice to the needs and purposes of the parties. If as suggested by St. Paul, this has now all been changed by the 1955 addition of the "Severability

11. Like McDowell v. United States Fidelity and Guaranty Company, 260 Ala. 412, 71 So.2d 64, note 8, supra, it involved a suit by one employee against another employee of the same employer, the named assured. There was no cross-employee exception (Par. III(d) ), and the Court, as did some others, held that the Employee Exclusion did not apply since the plaintiff-employee was not an "employee" of the defendant-employee.

Clause,"[12] see note 9, supra, it merely re-enforces our conviction that meeting the insurance needs of the parties and indeed, at times, overcoming the effect of adverse or unsound court decisions, presents factors "to be assayed by underwriters whether they sit at Lloyd's Coffee House," Maryland Casualty Company v. Southern Farm Bureau Casualty Insurance Company, 5 Cir., 235 F.2d 679, 683, or elsewhere. Courts are not to remake the contract. C. E. Carnes & Co. v. Employers' Liability Assurance Corp., 5 Cir., 101 F.2d 739; Williams v. American Automobile Insurance Company, 5 Cir., 44 F.2d 704.

The declaration by the District Court that the policy of American-Fidelity and Casualty Company, Inc. covered the Omnibus Assured, Larsen & Larsen, Inc., for an injury received by Estes in the course of his employment for Osborne was wrong. That declaration is reversed and here rendered to hold the American policy not applicable. The cause is remanded for such further and non-inconsistent proceedings as may be necessary.

Reversed and rendered in part and remanded.

### On Petition for Rehearing

### PER CURIAM.

St. Paul earnestly asserts in its Petition for Rehearing that we have held that there was no justiciable controversy between St. Paul and American and that the result necessarily would have been different after payment and subrogation. We did not so hold and the concluding sentence of the opinion, "That declaration is reversed and here rendered to hold the American policy not applicable," discloses that we did not decide that, under these circumstances, there was no "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C.A. § 2201. Dotschay for Use and Benefit of Alfonso v. National Mutual Insurance Company of District of Columbia, 5 Cir., 246 F.2d 221; General Insurance Co. of America v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289; cf. United Pacific Insurance Company v. Ohio Casualty Company, 9 Cir., 172 F.2d 836; Maryland Casualty Company v. Hubbard, D.C.Cal., 22 F.Supp. 697; Oregon Auto Insurance Company v. United States Fidelity & Guaranty Company, 9 Cir., 195 F.2d 958. Our discussion, incident to the quest for the intention of the parties (that is as between Osborne and American) was to point up the undeniable fact that there was no relationship between St. Paul and American and that St. Paul neither had nor could claim any rights, as such, under American's policy. This inheres in the nature of two completely separate contracts between two sets of unrelated parties. The desirable flexibility of declaratory relief cannot, of course, make a new contract or add parties to it.

The Petition for Rehearing is therefore denied.

12. Significantly in St. Paul's policy with Employee Exclusions comparable to American's, note 6, supra, it presumably thought that to extend coverage of the kind sought by it here, it was necessary to add this special cross liability endorsement:

"Cross Liability

"The inclusion of more than one Insured under this policy shall not in any way affect the rights of any such Insured either as respects any claim, demand, suit or judgment made or brought by or in favor of any other Insured, or by or in favor of any employee of such other Insured. This policy shall protect each Insured in the same manner as though a separate policy had been issued to each; * * *."

But even this would not likely extend St. Paul's coverage as far as that sought here, since St. Paul (unlike American) had, or thought it had, an "Excess" rather than pro rata Other Insurance endorsement, note 5, supra.